Vance YOUNG, Plaintiff–Appellant,

v.

Joseph A. CALIFANO, Jr., Secretary, Health, Education and Welfare, Defendant–Appellee.

No. 78–1478.

United States Court of Appeals, Sixth Circuit.

Argued July 10, 1980.

Decided Oct. 2, 1980.

was not under a disability within the meaning of the Social Security Act. The Appeals Council adopted the decision of the ALJ, making it the final decision of the Secretary of Health, Education and Welfare. The present action was then filed in the district court pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g). After considering the administrative record, the district court concluded that the decision denying benefits was supported by substantial evidence and granted summary judgment to the Secretary. This appeal followed.

The plaintiff was 38 years old at the time of his back injury and has not worked since that time. Though the plaintiff went as far as the fifth grade in school, he is unable to read or write and can barely count. Prior to injuring his back Young worked at various occupations, all involving heavy manual labor. The ALJ concluded that the plaintiff was no longer able to perform his usual work, but was able to meet the work requirements of a sedentary occupation. The ALJ stated this finding as follows:

> It is found that the testimony as to intractable pain is credible in connection with heavy, moderate, and light activity, but is not of such severity to prevent sedentary activity where he can change his position frequently.

On the basis of testimony by a vocational expert, the ALJ concluded that a variety of sedentary industrial jobs exist which the plaintiff is capable of performing. The ALJ also found that the plaintiff, without justifiable cause, had failed to follow prescribed medical treatment.

H. H. Gearinger, Chattanooga, Tenn., for plaintiff–appellant.

John H. Cary, U. S. Atty., John C. Cook, Asst. U. S. Atty., Chattanooga, Tenn., for defendant–appellee.

Before EDWARDS, Chief Judge, and WEICK and LIVELY, Circuit Judges.

LIVELY, Circuit Judge.

This is a social security disability case. The plaintiff claimed disability beginning in January 1975 as the result of a back injury. Following administrative denial there was a hearing before an administrative law judge (ALJ). In October 1976 the ALJ filed a decision in which he found that the plaintiff

■ When an applicant for disability benefits establishes his inability to return to his former occupation, the burden shifts to the Secretary to show that the plaintiff retains residual capabilities which would permit him to engage in other substantial gainful employment. *Noe v. Weinberger,* 512 F.2d 588, 595 (6th Cir. 1975). In this case the Secretary argues that he sustained this burden with medical evidence, particularly that of Dr. G. K. McAllister, an orthopedic surgeon. In his report of a Septem-

ber 30, 1975 examination, Dr. McAllister found "questionable spondylosis on the left. No spondylolisthesis . . ." and made the following evaluation:

> This patient seems over–reactive to palpatation of the lower back. Possibly he does have some low back problems, but they do not seem to be outstanding.

Dr. McAllister completed the "Disability Determination Section" of his report to the Secretary by checking a box for "Light Work." [1]

This was not the last word from Dr. McAllister, however. He filed office notes of further examinations and treatment of the plaintiff in the course of ten office visits between January and August 1976. These notes disclose that another X–ray in March 1976 showed "bilateral spondylosis." At that time a new medication was prescribed, and the plaintiff was advised to sleep on a bed board. Thereafter Dr..McAllister tried injections to relieve the pain, prescribed Valium for tense muscle spasms and fitted the plaintiff with a soft neck brace. In April 1976 Dr. McAllister gave Mr. Young the choice of complete bed rest for six weeks or referral to a neurosurgeon for a myelogram and possible surgery. The plaintiff chose bed rest and continued to return to Dr. McAllister until August 1976. On the last recorded visit, Dr. McAllister again had an X–ray made and concluded that Young has a "very slight spondylolisthesis" (as opposed to his previous diagnoses of "questionable spondylosis on the left. No spondylolisthesis" and "bilateral spondylosis."). He made no evaluation of ability to work at that time.

Dr. Sternbergh, a neurosurgeon, appears to have seen the plaintiff for the first time on May 23, 1975 on referral from Dr. Clark, an orthopedic surgeon who treated Young immediately after the onset of his problem and fitted him with a brace. At that time Dr. Sternbergh noted that conservative treatment had not produced satisfactory re-

sults and he recommended a myelogram to confirm his tentative finding of "extruded L 4–5 disc, left." The myelogram was not performed. Mr. Young returned to Dr. Sternbergh in September 1976 shortly after the last recorded visit to Dr. McAllister. After examination, Dr. Sternbergh again made a tentative diagnosis of possible herniated lumbar disc and suggested a myelogram and possible surgery. Though the plaintiff did not submit to the myelogram or an operation, he continued to return to Dr. Sternbergh. On August 30, 1977, Dr. Sternbergh wrote:

> Vance Young is under my professional care. He is completely incapacitated from a ruptured lumbar disc and unable to work.

The record also reveals that Mr. Young was hospitalized during the summer of 1976 under the care of Dr. Stanley Payne, a neurosurgeon. Dr. Payne placed the plaintiff in pelvic traction for ten days. He then suggested a myelogram and possible surgery, but Mr. Young declined to undergo these procedures. In his testimony before the ALJ the plaintiff said he was "scared of the surgery" and "of them putting those needles in that back." He testified that his fear of the operation was based on his knowledge of people who "had got in bad shape from operations." He also stated the doctor told him he might get 50% relief from his pain from surgery, but "that back will still hurt after this . . . after you've completed that surgery." Mrs. Young testified she was afraid her husband would be paralyzed from surgery. So far as the record shows, no physician advised the plaintiff that surgery would enable him to perform gainful labor again.

The only treating or examining physician who expressed an opinion that Mr. Young retained a residual capacity to engage in substantial gainful employment was Dr. McAllister. This consisted of checking a box on a social security form labeled "light

1. Light work is defined as "... lifting 20 pounds maximum with frequent lifting and/or carrying of objects weighing up to 10 pounds, or requires walking or standing to a significant degree, or requires sitting most of the time but entails pushing and pulling of arm and/or leg controls."

work." This evaluation was made at the time of Dr. McAllister's first examination of the plaintiff in September 1975. Yet seven months later, after trying a number of procedures, Dr. McAllister prescribed six weeks of complete bed rest as an alternative to surgery. When complete bed rest did not prove effective, Mr. Young was referred back to Dr. Sternbergh. On August 30, 1977, nearly two years after Dr. McAllister indicated on the form that Mr. Young could do light work, Dr. Sternbergh found him "completely incapacitated" and "unable to work." During the two years between Dr. McAllister's initial evaluation and Dr. Sternbergh's last one no examining or treating doctor even suggested that Mr. Young could engage in substantial gainful activity.

A vocational expert testified in this case. He defined "light" and "sedentary" work and "bench–type jobs." The finding of the ALJ that the plaintiff retained the residual capacity to do sedentary work refers to this witness' definitions. Sedentary work was said to involve lifting nothing weighing over ten pounds–things such as books and ledgers. Sedentary work may involve some walking and some leg control. Bench–type jobs were illustrated by reference to assembling electrical parts and using hand tools in the manufacture of leather or cloth items. Specific jobs of this kind were identified in the general area of Young's residence. The witness testified that there are some sedentary jobs, particularly of the bench type, which can be performed by an illiterate person. However, he acknowledged that the ability to do such work would depend on good manipulative ability and good visual acuity, skills which would be increased by the practice of using the hands and eyes in the past.

■ We conclude that the ALJ erred in determining that the plaintiff is not disabled because his pain which is "intracta-ble" for heavy, moderate and light activity is not of such severity as to prevent sedentary activity. He did not address the question of whether Young's residual capacity for extremely limited physical activity, which would theoretically permit the performance of sedentary jobs, included any transferable capabilities which would indicate an actual capacity to do such work. *Noe v. Weinberger, supra.* As this court has stated repeatedly, a claimant's capacity to perform work must be evaluated in light of *his* age, education, work experience and impairments. *See, e. g., Allen v. Califano,* 613 F.2d 139, 147 (6th Cir. 1980); *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978); *Noe v. Weinberger, supra,* 512 F.2d at 596.

The evidence discloses an illiterate person whose back impairment has disabled him from engaging in any work of the type he has previously done. By the time of the hearing, the opinion of Dr. McAllister that Young could do light work was outdated. There was no showing that this claimant, in his condition, with his work experience and education could perform any of the types of jobs referred to at the hearing. The Secretary offered no evidence that Young had the manipulative ability or visual acuity to perform any of the jobs mentioned by the vocational witness. On the whole record, we conclude that the Secretary failed to carry his burden of proof.

■ Our inquiry does not end here. Since the Appeals Council and the district court agreed with the "no disability" determination, they did not reach the second basis on which the ALJ denied benefits–the plaintiff's unwillingness to submit to a myelogram and possible surgery. However, this issue may be decided from the record before us. Regulations of the Social Security Administration provide for denial of benefits where a claimant willfully fails to follow prescribed treatment.[2] There is no dispute that Young's impairment lasted

2. 20 C.F.R. § 404.1518 (1979) provides as follows:

For purposes of entitlement to a period of disability or to disability insurance benefits or to child's, widow's or widower's insurance benefits based on disability, an individual's impairment must also be expected to result in death or to have lasted or be expected to last for a continuous period of not less than 12 months. An individual with a disabling

more than 12 months. There was no showing that he failed to follow any prescribed treatment. Young followed the prescription for complete bed rest, underwent traction, and tried the various braces and medications which were prescribed. The myelogram and possible operation were "suggested" and offered as alternative procedures. Though doctors recommended these procedures, no one appears to have prescribed them. Both Young and his wife gave explanations for his reluctance to submit to these procedures. There was no testimony that Young's unwillingness to follow these particular recommendations constituted a willful failure to follow prescribed treatment. We conclude there was no basis in the record for the ALJ's finding on this feature of the case.

The judgment of the district court is vacated and the case is remanded to the district court with directions that it be further remanded to the Secretary for entry of an order granting benefits.

impairment which is amenable to treatment that could be expected to restore his ability to work shall be deemed to be under a disability if he is undergoing therapy prescribed by his treatment sources but his impairment has nevertheless continued to be disabling or can be expected to be disabling for at least 12 months. However, an individual who willfully fails to follow such prescribed treatment cannot by virtue of such failure be found to be under a disability. Willful failure does not exist if there is justifiable cause for failure to follow such treatment.