770 F.2d 168
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
HARVEY T. WEBSTER, III, PLAINTIFF-APPELLANT,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, DEFENDANT-APPELLEE.
 NO. 84-5857
 United States Court of Appeals, Sixth Circuit.
 7/8/85
 
 E.D.Tenn.
 AFFIRMED
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE
 BEFORE: KENNEDY and WELLFORD, Circuit Judges; and BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Claimant, Harvey Webster, III, appeals from the Secretary's denial of Supplemental Security Income ('SSI') disability benefits. The Secretary denied benefits because claimant's mental disorder did not meet the listings severity. We AFFIRM because there is substantial evidence of claimant's refusal to follow his physicians' prescribed course of treatment, and that no physican has specifically indicated that Webster is incapable of following the recommended treatment and/or incapable of any kind of work after therapy.
 
 
 2
 Claimant filed an application for SSI benefits alleging mental illness (paranoid schizophrenia) beginning November 1, 1981. The application was denied initially and on reconsideration. After a hearing, the ALJ issued a decision denying benefits. The Appeals Council denied claimant's request for review, and the district court affirmed the Secretary's denial of benefits.
 
 
 3
 Claimant was born December 5, 1958, and was 24 at the time of his hearing. He completed one semester of college, and has worked as a parking lot attendant (3/75-6/75), rock mason (5/77-5/79), laborer at a Coca-Cola bottling plant (4/80-4/80), and as a supervisor one day per week at a juvenile detention center (7/80-8/81). He was hospitalized at Moccasin Bend Psychiatric Hospital for a month in 1978, immediately after his semester in college.
 
 
 4
 Currently, claimant does very little but watch TV and play with and take care of his pet dog. He lives with his mother and drives her two blocks to her bus station in the morning. He occasionally visits his father, and has gone on fishing trips and has vacationed in Florida with him.
 
 
 5
 Dr. Patten, who saw claimant on eight separate occasions, wrote in his 1982 interview notes:
 
 
 6
 I note supportive therapy is not beeing accepted. In may opinion it is strongly indicated [and] needed . . . in the light [of] his limited acceptance of therapy I view progress with caution.
 
 
 7
 Patient indicated with emphasis a number of times his desire to get on 'Social Security' to get a check. He also explains the Government deserves to do this . . . I get the impression he manipulates his parents.
 
 
 8
 He was advised by Dr. Kim for hospitalization I feel same & so recommended. He refused both recommendations.
 
 
 9
 He is quite emphatic in his belief he is better.
 
 
 10
 Dr. Patten offered no opinion as to prognosis or to claimant's ability to work.
 
 
 11
 Dr. Kim, director of the Chattanooga Psychiatric Clinic, noted that claimant 'has been treated off and on at this Clinic since his last[1] hospitalization at Moccasin Bend [psychiatric hospital] in 1978.' In his April 30, 1982, report to the HHS disability determination section he noted the following:
 
 
 12
 his [Moccasin Bend] hospitalization was precipitated by his psychotic decompensation [loss of adequate functional powers] and was given a diagnosis of schizophrenia, paranoid type. It was also suspected that heavy use of drugs such as marijuana or speed had contributed to his decompensation. Since his first contact with this clinic his involvement in treatment has been rather superficial, that he would refuse to participate in counseling and insist that he only need[ed] to take medication. He had dropped out of treatment a number of times and he would . . . resume his treatment at the urging of his family . . . He came back . . . in June, 1980, at which time he was found to be incoherent, suspicious and delusional.
 
 
 13
 At times he appeared to be in fairly good contact with reality and at other times he would become more suspicious, hearing voices or overtly delusional. . . . Although, quite marginal, he seemed to have maintained a fair adjustment in life such as at least working part-time at Juvenile Detention Home, etc.
 
 
 14
 [After seeing him in March 1982] it was apparent that he had not been taking medicine as prescribed and he seemed to have decompensated further. Again, he was rather incoherent, had delusional thinking of paranoid nature and some auditory hallucinations as well.
 
 
 15
 In view of further deterioration of his condition and his mother's uncomfortable feeling about him immediate hospitalization at State hospital was strongly suggested but he left the Clinic saying that he didn't want to go to the hospital before the necessary paperwork was completed.
 
 
 16
 Other than his comment that claimant was marginally but fairly adjusted, Dr. Kim did not offer any opinion on claimant's ability to work.
 
 
 17
 George Bercaw, who is a 'Licensed Psychological Examiner,' submitted a psychological examination report to the disability determination section on February 18, 1983. In this report, he stated:
 
 
 18
 He [had] a noticeable tremulousness of the left upper extremity which almost amounts to a violent shaking of his arm and hand. However, there is considerable inconsistency with this and I noted in particular that when the patient was left in the examination room while taking the MMPI that, upon looking in on him, he did not have this 'tremor-like tremulousness' unless it was apparent that he was being observed.
 
 
 19
 His general stream of consciousness appears reasonably smooth. He . . . did not present with any labored thinking processes or pressured speech . . . I found no indications of loosening of the thought processes and, in point of fact, aside from his own indications of auditory hallucinations, I could find no overt manifest indications of this patient's experiencing any significant emotional distress. . . .
 
 
 20
 Diagnostically my impression is that this patient has been suffering a paranoid schizophrenia for quite some time. I see him as being very poorly motivated for any kind of professional treatment and for this reason see him as a very poor risk for any type of vocational rehabiliation. I suspect that this individual's contact with objective reality is rather tenuous. In large measure, I suspect that his emphasis on the auditory hallucinations as well as his imposed tremulousness during those portions of the exam when he was observed were his way of trying to impress upon me the severity of his disorder. Quite frankly, I don't thing [sic] that this patient is as vocationally impaired as he would have me to believe but I certainly do not doubt that he is a paranoid schizophrenic notwithstanding.
 
 
 21
 I certainly do see him as a psychologically constricted individual and seriously doubt that he will ever be capable of gainful employment.
 
 
 22
 Obviously the prognosis is very poor indeed. In my judgment this patient is not capable of being rehabilitated and I do not believe that he will ever be able to cooporate [sic] sufficiently to enable a successful vocational rehabilitation. It is precisely that lack of cooperation [sic], this lack of motivation, and the nature of his emotional disturbance that conspires to provide a very poor prognosis.
 
 
 23
 The pertinent evaluation of the evidence made by the ALJ in this case is supported by substantial evidence in our view:
 
 
 24
 Thus, the record has reflected that the claimant's emotional condition has favorably responded to use of psychotrophic medications and his treating psychiatrists have further indicated that he would expect to receive additional improvement with use of supportive therapy of which the claimant has persistently declined. Pursuant to Regulation 416.930, the claimant cannot be found disabled for an impairment for which he has failed to seek recommended care and treatment. The claimant's daily activities were further inconsistent with the degree of incapacitation alleged. Although the claimant may experience some degree of emotional stress, the record has failed to show that his emotional impairment is of such severity and duration to preclude him from engaging in all work activity on a sustained basis.
 
 
 25
 As is apparent from the record, each doctor who has examined claimant has opined that he should seek treatment for his mental problem. Although in his brief claimant argues that patients with his disorder 'probably will never recover,' the record indicates that treatment may help alleviate claimant's symptoms and permit him to be gainfully employed. Claimant, therefore, confuses a 'cure' with a 'restoration of an ability to work'. It is failure to follow prescribed treatment that may restore an ability to work, rather than treatment that 'cures' the problem, which militates against an award of benefits. 20 C.F.R. Sec. 404.1530; Young v. Califano, 633 F.2d 469, 472 (6th Cir. 1980); Lewis v. Gardner, 396 F.2d 436 (6th Cir. 1968).
 
 
 26
 We also find substantial evidence to support the ultimate finding of the ALJ that Webster's undoubted mental impairment is not a 'severe impairment' within the meaning of regulations which we have found to be valid based on the medical opinions herein specified. On the record before us claimant's refusal to follow the prescribed course of treatment defeats his claim in the absence of proof that he is incapable of following a course of prescribed treatment. There is evidence that the physical manifestations of claimant's psychological problems are exaggerated. The record shows that claimant manipulates his parents; and further shows that claimant believes the government 'deserves' to pay him social security benefits. The Secretary, her ALJ, and the district court reasonably could consider claimant's exaggerations, manipulations, and self-serving desires in determining the weight to be accorded his testimony.
 
 
 27
 If, as argued by appellant's counsel, Webster himself is incapable by reason of his mental disorder of following a course of prescribed treatment, there is no showing that a parent, guardian or conservator could not, with court authorization, take appropriate steps to comply on Webster's behalf and for his benefit.
 
 
 28
 Until a thorough in-patient or out-patient course of treatment, along with a satisfactory regimen of medication, has been completed, the regulations do not require that claimant should receive benefits.
 
 
 29
 Accordingly, we AFFIRM the Secretary's denial of benefits.
 
 
 
 [1]
 It appears that claimant was hospitalized only once