Barbara SPARKS, SSN: 301–38–0088, Plaintiff,

v.

Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant.

No. C–1–86–472.

United States District Court, S.D. Ohio, W.D.

Oct. 5, 1987.

E. Jeffrey Casper, Middletown, Ohio, for plaintiff.

Joseph E. Kane, Asst. U.S. Atty., Columbus, Ohio, for defendant.

## OPINION AND ORDER

SPIEGEL, District Judge:

This matter is before the Court on the Report and Recommendation of the Honorable J. Vincent Aug, Jr., United States Magistrate, recommending that the decision of the Secretary be reversed, and that plaintiff be granted social security disability benefits for which she applied (doc. 10). The Secretary has filed an objection to this Report (doc. 12), and plaintiff has replied (doc. 13). Upon consideration of the entire record, we find: (1) that the medical opinions and diagnoses of plaintiff's treating physician are due substantial deference; (2) that the Administrative Law Judge (ALJ) improperly considered plaintiff's obesity in denying her benefits; and (3) that the ALJ failed to develop the factual record fully and fairly regarding plaintiff's failure to follow her prescribed medication. Since this evidence is essential for a fair determination of plaintiff's claim, we remand this case to the Secretary for additional findings and reconsideration.

## I

### BACKGROUND

Plaintiff was born in December 1943 and has a high school education and training in keypunch operations (tr. 38). Her past work experience has been as a pizza cook and shift supervisor in a restaurant (tr. 77). Plaintiff was hospitalized on February 16, June 29, and July 15, 1984 for complications relating to diabetes mellitus, angina, hypertension, and congestive heart failure

(tr. 93–104, 105–127, 128–143). During this period, she remained employed.

On August 24, 1984, plaintiff was hospitalized for hypertensive cardiovascular disease, pulmonary disease secondary to the hypertensive cardiovascular disease, diabetes mellitus, interstitial lung disease, and premature ventricular contractions (tr. 144). After her release from the hospital, plaintiff never returned to her job.

On September 17, 1984, plaintiff was again hospitalized for hypertensive cardiovascular disease, diabetes mellitus, and ventricular arrythmia (tr. 171–181).

On November 6, 1984, plaintiff applied for disability benefits, alleging permanent disability as of August 24, 1984 from multiple impairments, including congestive heart failure, cardiomyopathy, diabetes mellitus, and hypertension (tr. 59–62, 72–78).

On December 13, 1984, plaintiff was hospitalized for uncontrolled diabetes (tr. 188). The attending physician, Dr. Michael Barber, noted that "[t]he patient has not been in good health over this last year. She is currently disabled from her job, primarily due to her cardiovascular problem" (tr. 188). Dr. Barber also observed that "[t]he patient has not been following her diet as carefully, has not been as active. She is eating more heavily at home" (tr. 190).

On March 8, 1985, plaintiff's application for disability benefits was denied (tr. 63–64).

On March 28, 1985, plaintiff was hospitalized for congestive heart failure (tr. 208). Plaintiff's attending physician, Dr. James Simcoe, noted that

The patient is a 41–year-old white female with a long history of diabetes mellitus, hypertension, congestive heart failure with diabetic myopathies and obesity, controlled in the past six months on multiple medications but for several weeks prior to admission, the patient has had increasing dyspnea, weakness, weight gain of approximately 10 lb., unable to lie to sleep, sleeping sitting up in a chair and dyspnea on any exertion. The patient has been on multiple medication listed above. It has been hard to control

her congestive heart failure and hypertension in the past.

(tr. 208).

On April 17, 1985, plaintiff filed a request for reconsideration of her denial of benefits, alleging that she is "totally disabled from performing any type of gainful employment" (tr. 65).

On May 1, 1985, plaintiff was hospitalized for uncontrolled diabetes. Dr. Christopher Meier observed that plaintiff

has had diabetes for many, many years and most recently has had floridly out of control with blood sugars consistently above 300 and 350. Attempts have been made to control her diabetes as an outpatient with adjustment of her daily insulin dosage, but this has been to no avail with further worsening of her diabetes. The patient has been suffering from polyuria and polydipsia. The patient, in addition, has known cardiomyopathy that may be on a hypertrophic basis. The patient has had problems with increasing shortness of breath recently. The shortness of breath is mainly noted at night while sleeping. Also the patient has fatigue during the day. The patient previously worked but has been on Disability for approximately six months due to her severe cardiomyopathy.

(tr. 318). During this period of hospitalization, Dr. Michael Barber noted in his summary report that

[i]t was felt that diet problems constituted her major difficulties, with control of her diabetes, emphasis was placed on weighing out her food in a very exact fashion, also encouraged her to increase her activity level. As her blood sugars improved, the patient's dyspnea improved and she was able to ambulate without difficulty at the time of her discharge.

(tr. 320).

On May 26, 1985, plaintiff was hospitalized again for uncontrolled diabetes and congestive heart failure (tr. 326–27). Dr. James Simcoe reported that

[t]he patient's symptoms were those of diabetes out of control. The patient was placed on the same dose of insulin, but

placed back on diabetic diet and responded to this and improved. During the hospital course, it was in the 200–300 range with her sugars at the time of dismissal. The patient was instructed to follow diet more carefully as she had been in the past. The patient will be followed up in the office and will use home glucose monitoring as an outpatient.

(tr. 327).

On June 21, 1985, the Social Security Administration (SSA) denied plaintiff's disability claim after review by a physician and disability examiner (tr. 66–67).

On July 10, 1985, plaintiff requested a hearing before an ALJ to disagree with the denial of her disability claim and to submit additional evidence (tr. 32).

A hearing was held before the Honorable Rodney G. Haworth, ALJ, on November 12, 1985. Present were plaintiff, her attorney E. Jeffrey Casper, and Ralph F. Huller, Jr., M.D., a medical advisor. During the hearing, plaintiff was asked questions concerning her general health, her symptoms, and her level of activities. Dr. Huller was asked by Judge Haworth to review plaintiff's medical history, and he concluded that plaintiff's medical conditions, in combination or separately, neither met nor equalled in severity a listed impairment required to find plaintiff disabled (tr. 52).

On February 7, 1986, Judge Haworth issued his opinion, denying plaintiff's claim for disability benefits. His decision focused primarily upon four factors: (1) reviews by physicians of the Ohio Bureau of Disability Determination who concluded that plaintiff is capable of medium work activity despite her medical impairments; (2) the testimony of Dr. Huller who, in addition to opining that plaintiff did not meet or equal an impairment listed, determined that plaintiff was capable of performing sedentary and light work activity; (3) plaintiff's own testimony regarding her activities; and (4) plaintiff's record of poor compliance with dietary and insulin therapy for her diabetes.

On February 27, 1986, plaintiff filed a request for review of Judge Haworth's decision by the Appeals Council.

On May 14, 1986, the Appeals Council concluded that there was no basis under 20 C.F.R. § 404.970 for granting plaintiff's request for review. Accordingly, plaintiff's request was denied and Judge Haworth's decision stands as the final decision of the Secretary of Health and Human Services.

## DISCUSSION

■ A determination that an individual is disabled shall be made "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). This determination is reserved exclusively to the Secretary of Health and Human Services or to an approved state agency. Id. § 421. "The findings of the Secretary as to any act, if supported by substantial evidence, shall be conclusive...." Id. § 405(g). "Substantial evidence" means more than a mere scintilla of evidence. There must be sufficient evidence that a reasonable person would accept as adequate to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed. 2d 842 (1971). Further, this evidence must be based on the record as a whole. *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365, 366 (6th Cir.1984); *Allen v. Califano*, 613 F.2d 139 (6th Cir.1980). Accordingly, this Court must review the record in its entirety to determine if the ALJ's finding that plaintiff is not disabled is supported by substantial evidence.

■ The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir.1984). This is true, however, only if the treating physician's opinion is based

upon sufficient medical data. *Garner*, 745 F.2d at 391; *Houston*, 736 F.2d at 367. Ultimately, of course, the determination of disability is the perogative of the Secretary, not the treating physician. *Garner, supra; Houston, supra; Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 538 (6th Cir.1981), *cert. denied*, 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983). In the instant case, plaintiff's treating physician, Dr. Simcoe, conducted a series of examinations over the years, and he was, therefore, in a unique position to evaluate plaintiff's condition. Consequently, his considered opinion was that plaintiff "has a major disability and is unable to work effectively and will remain so in the future.... [H]er cardiac disease is very significant and she is unable to function for any extended period of time in any capacity. This cardiac disease is felt to be [sic] on the basis of her hypertension and diabetes mellitus" (tr. 196).

■ At the hearing, Judge Haworth questioned plaintiff regarding her physical complaints and daily activities (tr. 38–48), and concluded that her testimony supports a finding that she can at least perform sedentary work as defined at 20 C.F.R. § 404.1567 (tr. 22). "Sedentary work", as defined by the Secretary's regulations, involves lifting no more than ten pounds at a time, a certain amount of walking and standing, but primarily sitting. 20 C.F.R. § 404.1567(a). However, the medical evidence in the record shows that plaintiff's treating physician, Dr. Simcoe, found that she is unable to engage in *any* sedentary activity (tr. 226). Further, Dr. Simcoe advised that plaintiff's "condition is fairly brittle and patient goes into congestive heart failure with very little warning and patient is markedly limited in her functional capacity. Is able to walk, but gets short of breath even with this. Has been unable to do any type of gainful employment or her normal minimal housework at home. I feel that on the basis of her disease processes Mrs. Sparks is unable to be employed in any form" (tr. 337–38). Frederick J. McDermott, M.D., performed a Residual Functional Capacity Assessment on plaintiff on March 5, 1985 (tr. 206–207). Steven H. Grendel, M.D. performed a similar assessment on June 15, 1985. Both physicians, after brief examinations with plaintiff, concluded that plaintiff's capacities were limited, but that she was able to lift fifty pounds, frequently lift twenty-five pounds, stand and/or walk about six hours per eight-hour day, and sit for a total of about six hours per eight-hour day (tr. 206–07, 239–40). While Judge Haworth's conclusion that plaintiff can perform at least sedentary work may be well grounded in the assessments performed by Drs. McDermott and Grendel, ample evidence exists throughout the record that plaintiff undergoes congestive heart failure easily (tr. 105–127, 144–170, 171–181, 208–221). These documented occurrences, along with the opinions and diagnoses of her treating physicians, constitute evidence which is to be granted substantial deference. *King, supra.*

■ Further, after reviewing all of the medical evidence in the record, we take issue with Judge Haworth's reliance on plaintiff's inability to control her diet and medication as providing support for her finding of non-disability (tr. 22; doc. 12, at 3).

With regards to plaintiff's dietary habits and obesity, our parent circuit has made it quite clear that it is "[i]mpermissible to assume that obesity can be remedied." *Johnson v. Secretary of Health and Human Services*, 794 F.2d 1106, 1113 (6th Cir.1986). As the Fifth Circuit recently stated:

> In ... disregard of reality, the Secretary continues to hold that a person who is disabled because of obesity has a condition that is per se remediable, without examining the medical condition and personal factors that might make it possible or impossible for a particular disabled person to remedy his obesity. As we held in *Scott v. Heckler*, [770 F.2d 482, 486–87 (5th Cir.1985) ],
>
> > Significant weight loss is indeed difficult even for the iron willed. For the less determined, who suffer from other painful and debilitating impairments

that restrict movement and no doubt sap the resolve for self-improvement, such a significant loss of weight may be impossible. Alcoholism maybe considered a disabling impairment despite the fact that a doctor has orderd the alcoholic to stop drinking. Whether or not [the claimant] has the ability to control [his] eating habits is at least a fact question, not a matter to be determined by *a priori* judgment, for certain impairments, although initially self-inflicted, may become diseases that either contribute to an overall disability or are of themselves disabling. *Lovejoy v. Bowen,* 813 F.2d 55, 59 (5th Cir.1987). While ample evidence exists in the record showing that plaintiff has received instruction on diet and weight control as a necessary tool to help control her diabetes and hypertension (tr. 96, 190, 266, 287, 320, 327, 348–49), nothing in the hearing transcript or in Judge Haworth's opinion confronts the *cause* of her repeated failure with diet.

Similarly, Judge Haworth's reliance on plaintiff's failure to follow her prescribed medication to control her diabetes and hypertension is not adequately supported. It is well-settled that "[a]n impairment that can be remedied by treatment will not serve as a basis for a finding of disability." *Henry v. Gardner,* 381 F.2d 191, 195 (6th Cir.1967), *cert. denied,* 389 U.S. 993, 88 S.Ct. 492, 19 L.Ed.2d 487, *reh'g denied,* 389 U.S. 1060, 88 S.Ct. 797, 19 L.Ed.2d 864 (1968). The regulations of the SSA provide for a denial of benefits where a claimant fails to follow prescribed treatment. *Young v. Califano,* 633 F.2d 469, 472–73 (6th Cir.1980). Specifically, the applicable regulation states: "if you do not follow the prescribed treatment without a *good reason,* we will find you not disabled...." 20 C.F.R. § 404.1530(b) (emphasis added). Reading the plain language of the regulation, we find that Judge Haworth had a responsibility to inquire why plaintiff does not take her medication with the prescribed regularity. While the record shows that plaintiff has repeatedly been instructed in the importance of taking her medication to keep her blood pressure normal and how to

inject herself regularly with the appropriate doses of insulin, nothing suggests *why* she fails to do so.

In sum, we find Judge Haworth's findings defective in three respects. First, he failed to give substantial deference to the opinions and diagnoses of plaintiff's treating physicians. *See King v. Heckler,* 742 F.2d 968, 973 (6th Cir.1984). Furthermore, he placed an unfair emphasis on plaintiff's inability to control her weight as a mechanism to control her diabetes and hypertension, contrary to established case law. Third, he failed to develop the factual record fully and fairly regarding plaintiff's failure to follow prescribed medications. The lack of evidence as to why plaintiff does not take her medicine prevented fair review of her claim for disability.

It is therefore the opinion of this Court that the case be REMANDED to the SSA for reevaluation and inquiry.

SO ORDERED.