45 F.3d 430
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Larry L. LONG, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 93-2321.
 United States Court of Appeals, Sixth Circuit.
 Dec. 27, 1994.
 
 Before: MILBURN, RYAN, and NORRIS, Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 The plaintiff, Larry Long, appeals from the judgment of the district court, which granted summary judgment to the Secretary, affirming her determination that Long's previous disability had ended and he was no longer entitled to social security disability benefits. Long assigns two errors to the district court's decision: 1) the finding that there is substantial evidence in the record to support the Secretary's finding that Long had experienced medical improvement related to his capacity to work; and 2) the finding that there is substantial evidence in the record to support the Secretary's finding that Long's impairments allowed him to perform a significant number of jobs in the national economy.
 
 
 2
 We conclude that there is not substantial evidence in the record to support the Secretary's finding that Long could perform a significant number of jobs in the national economy; accordingly, we vacate the district court's judgment. We also conclude that the record is insufficient to establish whether Long is disabled. Therefore, we remand the case to the district court with instructions to remand it to the Secretary for further fact finding.
 
 I.
 
 3
 Long worked as a millwright since the 1960s and for the same employer since 1970. Millwrightwork involves heavy lifting and climbing. On September 18, 1987, while at work, Long reached out to stop a falling piece of metal and suffered a serious injury to his right arm: the biceps muscle tore and a tendon was torn. Dr. Robert Kalb operated on Long's arm to reattach the tendon.
 
 
 4
 On December 28, 1987, Dr. Kalb put Long on a physical therapy program with the hope that he would be able to return to his job as a millwright. Long was motivated to return to his former job because he had already worked 18 years for the same company and wanted to put in enough time to qualify for a pension. Long's physical therapy progressed until July 1988, when he suffered a mild heart attack. Within three months, however, Long returned to his physical therapy.
 
 
 5
 On October 3, 1988, Long applied for social security disability benefits. Two months later, his claim was denied, and denied again on reconsideration. On April 20, 1989, Dr. Kalb approved Long's return to work. He worked only four days because his right arm became black and blue and swollen. Dr. H.A. Popovich instructed Long to stop work, but the next day, Dr. Kalb told Long to return to work.
 
 
 6
 Long worked until July 1989, when he was again seen by Dr. James Brue. Long complained of severe pain, stating that the pain prevented him from sleeping at night. Dr. Brue ordered Long to stop working, and he has not returned to work since. On August 3, 1989, Dr. Kalb diagnosed Long as having developed carpal tunnel syndrome and placed Long on a restriction of lifting no more than 15 pounds with his right arm.
 
 
 7
 On September 11, 1989, Long's appeal of the denial of his social security claim was heard before ALJ Byron Samuelson. The ALJ concluded that Long had experienced a closed period of disability from September 1987, when he was injured, to April 1989, when Dr. Kalb allowed Long to return to his heavy work as a millwright. The ALJ's reasoning was rather simple: if the doctor had approved Long's return to heavy work, even though this later proved to be beyond his ability, then Long must necessarily have been able to perform light work. Long appealed.
 
 
 8
 In February 1990, Dr. Kalb increased the limitation on Long's use of his right arm to lifting no more than 10 pounds. On March 8, 1990, Dr. Kalb diagnosed Long as having "tennis elbow." Long was suffering "cracking" of the right elbow when it was moved.
 
 
 9
 On February 19, 1991, the appeals council vacated ALJ Samuelson's decision to the extent that it found Long's disability had ended. The council remanded for further determinations. On June 4, 1991, a hearing was held before ALJ Bruce King. Long appeared with his counsel and testified, as did a vocational expert (VE). The Secretary ordered Long to undergo an evaluation, which showed that Long's right arm had a decreased range of motion and significant deficits in strength and endurance compared to his left arm. On October 28, 1991, ALJ King issued a decision finding that Long had experienced a closed period of disability ending May 31, 1989.
 
 
 10
 Long appealed this decision and the appeals council affirmed. On September 22, 1992, Long brought suit in the Eastern District of Michigan, seeking to have the ALJ's findings overturned. The district court referred the case to a magistrate judge for a report and recommendation. On August 23, 1993, the magistrate judge completed his report, recommending that ALJ King's decision be affirmed. Long timely filed objections to this report. The district court summarily adopted the magistrate judge's report and granted summary judgment for the Secretary. Long timely filed an appeal to this court.
 
 II.
 
 11
 42 U.S.C. Sec. 405(g) provides that the Secretary's findings of fact shall be conclusive if they are supported by substantial evidence based on the whole record. Substantial evidence is more than a scintilla; it is evidence that a reasonable mind would accept as adequate to support a conclusion. Landsaw v. Secretary of Health & Human Services, 803 F.2d 211, 213 (6th Cir.1986).
 
 A.
 
 12
 Long's first assignment of error is to the district court's conclusion that substantial evidence supports the Secretary's finding that Long had experienced medical improvement related to his capacity to work. As a preliminary matter, we must distinguish between the Secretary finding a closed period of disability, such as the present case, and a continuing disability review (CDR). In order to find a closed period of disability, the Secretary must find that at some point in the past, the claimant was disabled and that, at some later point in the past, he improved to the point of no longer being disabled. In a CDR case, the Secretary attempts at the CDR hearing to determine whether a claimant, who was found disabled at a previous hearing, is still disabled.
 
 
 13
 42 U.S.C. Sec. 423(f) requires that when conducting a CDR, the Secretary apply a two step analysis to determine whether termination of disability status is warranted. The first step is a determination whether the claimant's condition has improved medically; the second is whether the individual can perform substantial gainful activity. The implementing regulation, 20 C.F.R. Sec. 404.1594(f), prescribes an eight step analysis to reach the ultimate issue of disability. Medical improvement is determined by comparing the claimant's present condition with a relevant point in the past. For a CDR determination, the relevant point is the last date of a decision finding the claimant disabled. The relevant starting point is the onset date of the injury.
 
 
 14
 We conclude that there is substantial evidence that Long's condition had undergone medical improvement. However, the comparison dates chosen by the two ALJs below were improper considering the record that was developed after Long's aborted attempt to return to work in May 1989. The dates chosen are not dispositive, however, because, as we discuss below, ALJ King's decision has a more serious flaw.
 
 
 15
 The uncontradicted evidence in the record at the time of ALJ King's decision was that Long had been diagnosed with carpal tunnel syndrome and tennis elbow, and Dr. Kalb had placed a 10 pound weight restriction on Long's right arm. Carpal tunnel syndrome restricts a patient's ability to perform repetitive motions with his hands. The September 1991 BioMend evaluation which had been ordered by the agency showed that Long's right arm was deficient in strength and endurance compared to his left arm, but these deficiencies were a matter of degree, not a matter of functioning or not functioning. To the extent that Long's condition at the time of the BioMend evaluation was better than the total incapacity that Long first suffered after his injury, Long had experienced medical improvement.
 
 B.
 
 16
 Long's second assignment of error is to the district court's conclusion that substantial evidence supports the Secretary's findings that Long had acquired skills that would transfer to light or sedentary work and that there were significant numbers of jobs in the national economy he could perform.
 
 
 17
 The issues of transferable skills and exertional limitations that qualify one to do light or sedentary work are critical when the medical-vocational guide (the grid) is used to determine whether a claimant is disabled or not disabled. When using the grid, if the ALJ fails to make specific factual findings regarding whether the claimant has transferable skills, the ALJ has committed reversible error. Young v. Califano, 633 F.2d 469 (6th Cir.1980).
 
 
 18
 However, when the grid cannot be used, such as in this case, those issues are not critical. If the grid cannot be used, the ALJ must make a specific finding of how many jobs the particular claimant can perform with his individualized exertional and nonexertional impairments. Hall v. Bowen, 837 F.2d 272, 275 (6th Cir.1988).
 
 
 19
 Once the Secretary finds that a claimant cannot perform his past work, the burden shifts to the Secretary to prove the existence of other work, in significant numbers, that the plaintiff can perform. Felisky v. Bowen, --- F.3d ----, No. 93-1529, 1994 WL 525985 (6th Cir. July 7, 1994). If the Secretary attempts to carry his burden of proof through the testimony of a VE, the VE must testify in response to a hypothetical question which accurately describes the claimant "in all significant, relevant respects." Id. at * 8. We conclude that the hypothetical questions that ALJ King asked the VE did not accurately describe Long in all significant and relevant respects.
 
 
 20
 The first question from the ALJ concerned whether Long had acquired skills that could be transferred to the light or sedentary field. The VE responded that there were skills that would transfer, and he described four different jobs that Long was qualified to do. The following exchange then took place:
 
 
 21
 [ALJ:] Would these skills--well, tell me, would any jobs exist in the light field that these skills would transfer to? And if so, could you tell me what those jobs are?
 
 
 22
 [VE:] If we were to transfer these skills to the light category, approximately 75,000 production situations in assembly, inspection, fabrication and machine attendant.
 
 
 23
 The ALJ then asked the VE whether there were any jobs that Long could do if Long's subjective complaint's about pain were given full credibility. The VE responded that there would be none because Long complained of constant, debilitating pain. The ALJ found that Long's complaint of constant pain was not fully credible, and Long has not assigned error to that finding.
 
 
 24
 The ALJ and the VE then had the following exchange:
 
 
 25
 [ALJ:] Are all the 75,000 jobs in the light [ ] field and the 25,000 in the sedentary field, do all those jobs require bilateral use of the upper extremities?
 
 
 26
 [VE:] If you were to limit the 75,000 production situations to--well, let me say that most of those positions would require bilateral use.
 
 
 27
 [ALJ:] Are any of the jobs less repetitive in terms of requirements using the dominant right arm or are they all about the same?
 
 
 28
 [VE:] I would say the inspection and the machine attendant would--excuse me--be less than repetitive and require occasional use of the upper extremities.
 
 
 29
 This was the extent of the testimony from the VE concerning what jobs existed that Long had the capacity to perform.
 
 
 30
 The VE's testimony cannot amount to substantive evidence because the hypothetical questions that the ALJ asked did not take into account all of Long's relevant conditions. The ALJ's hypothetical questions failed to consider Long's carpal tunnel syndrome and tennis elbow, which had been diagnosed in August 1989, and March 1990, respectively. The result is that three of the ALJ's findings are not supported by substantial evidence:
 
 
 31
 First, the ALJ found that Long had no nonexertional limitations. This appears to be incorrect. If it were true, then the medical-vocational guidelines should have been used, rather than using a VE's testimony. In all events, the ALJ appears not to have considered Long's carpal tunnel syndrome and tennis elbow, both of which may limit his ability to perform work.
 
 
 32
 Second, the ALJ found that Long could perform the full range of light work, reduced by his ability to lift only 10 pounds. This finding is internally contradictory. The Secretary defines light work as requiring an employee to regularly lift 10 pounds and occasionally to lift 20 pounds. 20 C.F.R. Sec. 404.1567(b). The ALJ also found that Long could perform the full range of sedentary work. The testimony of the VE cannot be substantial evidence supporting these findings, because the ALJ's hypothetical questions failed to consider Long's carpal tunnel syndrome and his tennis elbow.
 
 
 33
 Third, the ALJ reasoned that if Long could perform the full range of light work, the grid would declare him to be not disabled; using the grid as a framework, the ALJ found that a significant number of jobs existed in the national economy that Long could perform. The ALJ concluded, then, that Long was not disabled, and that his disability ended May 31, 1989. The choice of May 31, 1989, was based on Long's attempt to return to work. This attempted return, however, seems to have exacerbated Long's problems. He was diagnosed with carpal tunnel and tennis elbow after he aborted his attempt to return. Again, the testimony of the VE is inadequate to show what jobs Long could perform because the witness did not consider all of his impairments.
 
 
 34
 There was some discussion at oral argument that counsel for Long may have had an obligation to ensure that the hypothetical questions asked by the ALJ accurately reflected the condition of the claimant. That position would be contrary to our precedent, however. Once the Secretary made a determination that Long could no longer perform his work as a millwright, she bore the burden of proving that there were significant numbers of jobs in the national economy that Long could perform. Felisky, supra. The Secretary failed to meet this burden. When the ALJ made his decision, Long was 53 years old, had a 10th grade education, had worked for 30 years as a millwright, had an exertional limit of 10 pounds on his right arm, had carpal tunnel syndrome, and had tennis elbow. The Secretary has the burden of showing that a person of Long's age, education level, and work experience, with his exertional and nonexertional limitations, could perform a significant number of jobs. The testimony of the vocational expert must take these factors into account before it can amount to substantial evidence.
 
 III.
 
 35
 The district court's judgment for the Secretary must be vacated. Because the record has not resolved all the factual issues and we cannot be certain that Long is entitled to disability benefits, we must remand for further fact finding. Faucher v. Secretary of Health & Human Services, 17 F.3d 171, 176 (6th Cir.1994). Accordingly, the judgment of the district court is VACATED, and we REMAND with instructions to remand the case to the Secretary for further fact finding.
 
 
 36
 MILBURN, Circuit Judge, dissenting.
 
 
 37
 I respectfully dissent. I would affirm the decision of the Secretary because there is substantial evidence in the record to support the Secretary's finding that plaintiff Long could perform a significant number of jobs in the national economy. The majority concludes that the testimony of the Vocational Expert ("VE") does not amount to substantial evidence that plaintiff Long could perform a significant number of jobs in the national economy because the hypothetical questions that the ALJ asked did not take into account all of plaintiff Long's relevant conditions. Specifically, the majority concludes that the ALJ's hypothetical questions failed to consider plaintiff Long's carpal tunnel syndrome and tennis elbow, which had been diagnosed in August 1989, and March 1990.
 
 
 38
 On August 3, 1989, plaintiff was examined by his treating physician Dr. Kalb. Dr. Kalb's diagnoses included right tennis elbow, symptoms of right early carpal tunnel syndrome, and "status post right biceps tendon rupture of the elbow repair." R. 268. Dr. Kalb nonetheless indicated that claimant should avoid lifting more than 15 pounds with his right hand for three months.
 
 
 39
 Subsequently, in a follow-up report dated February 12, 1990, Dr. Kalb reported that plaintiff Long had been given an "indefinite work restriction with limited use of his right arm above 10 pounds as a weight restriction." R. 311. Thereafter, on March 8, 1990, Dr. Kalb reported that claimant had a full range of motion of his right elbow, his neurovascular system was intact, and his strength seemed good on manual muscle testing. Dr. Kalb stated that claimant had recovered completely from his heart problems, and he had no vigorous therapy of formal therapy for the past eight months. Dr. Kalb made the following diagnoses: (1) no evidence of loose body in the right elbow, (2) cardia problems resolved, and (3) right tennis elbow not improved by injection. Finally, Dr. Kalb noted that no work was available for claimant, but that if work were available, he could return to work "with the restrictions of right hand job, lifting no greater than 10 pounds with full use of left arm." R. 312.
 
 
 40
 A supplemental hearing was held in this case on June 4, 1991. The vocational expert ("VE") who testified at that hearing, Paul Delmar, identified 25,000 jobs in the regional economy which plaintiff could perform at the sedentary level of work. VE Delmar further identified skills which plaintiff had acquired as the result of his past employment as a millwright. Although the ALJ's hypothetical to VE Delmar did not identify carpal tunnel syndrome and right tennis elbow as plaintiff's physical impairments, the hypothetical is substantial evidence in support of the Secretary's conclusion. VE Delmar is not a physician, he is a vocational expert. Dr. Kalb who diagnosed plaintiff's symptoms of early carpal tunnel syndrome and right tennis elbow, concluded that plaintiff could return to work with the restriction of lifting no more than ten pounds with his right arm. The ALJ's hypothetical and VE Delmar's response are consistent with such a restriction. Thus, even if the ALJ had also added that plaintiff Long suffered from carpal tunnel syndrome and right tennis elbow, VE Delmar's response to his hypothetical would have been no different. Rather, the only way VE Delmar's testimony could have differed is if VE Delmar made a medical conclusion about the severity of plaintiff Long's carpal tunnel syndrome and tennis elbow, a conclusion which VE Delmar is not qualified to make.
 
 
 41
 I would have no problem with the majority's conclusion that this case should be vacated and remanded for further findings of fact if further fact finding could produce a different result. However, where, as in this case, a remand for further findings of fact would be a futile act which would not produce a different result, I must disagree. In this case, Dr. Kalb, plaintiff's treating physician, diagnosed plaintiff's carpal tunnel syndrome and tennis elbow and also indicated that plaintiff could return to work subject to a ten pound lifting restriction. Since the ALJ's hypothetical and the VE's testimony are consistent with this restriction, I would conclude that the VE's testimony is substantial evidence in support of the ALJ's conclusion that, in light of plaintiff's residual functional capacity to perform sedentary work, there are a significant number of jobs in the national economy which the plaintiff could perform. Therefore, I respectfully dissent.