Harold W. **FRALEY**, Plaintiff-Appellant,

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES,**
Defendant-Appellee.

No. 83–5320.

United States Court of Appeals,
Sixth Circuit.

Argued March 27, 1984.

Decided May 8, 1984.

Frank H. McCartney, argued, Suit, McCartney & Price, Flemingsburg, Ky., for plaintiff-appellant.

Louis DeFalaise, U.S. Atty., Miles H. Franklin, Peter M. Davenport, argued Asst. U.S. Attys., Lexington, Ky., for defendant-appellee.

Before JONES and CONTIE, Circuit Judges, and CHURCHILL, District Judge.*

CONTIE, Circuit Judge.

Harold Fraley appeals from a district court order affirming the Secretary of Health and Human Services' termination of social security disability benefits. The issues on appeal are whether the record contains substantial evidence to support the ALJ's finding that (1) the claimant's impairment is no longer severe, and (2) the claimant unreasonably refused to undergo back surgery for his impairment.

The claimant was originally granted disability benefits in March 1979 based upon a work-related back injury which occurred on or about October 19, 1976. Following a periodic review of his condition, his benefits were terminated in December 1980. The claimant then requested a hearing before an administrative law judge.

---

* The Honorable James P. Churchill, United States District Court for the Eastern District of Michigan, sitting by designation.

## CLAIMANT'S TESTIMONY

The claimant is currently 27 years old and has an eleventh grade education. He testified that he hurt his back while working in a coal mine. The claimant complained of severe pain in his lower back which radiated into his right hip and leg. He also stated that he cannot bend over to lift things, and that he experiences considerable pain when he sits for a long period of time or when he walks on hard surfaces. He acknowledged that several doctors have recommended back surgery, but he admitted that he was fearful of such a procedure:

Q: Are you a little hesitant?

A: Yes, they can't guarantee me that, you know, there's no guarantee that I'll be better, there's a chance that I'll be worse and I've talked to a lot of people that has had this surgery, and it's [sic] not helped them any, and I know people that it's [sic] hurt.

## MEDICAL EVIDENCE

(A) Dr. Alvis Porter examined claimant on January 24, 1980, April 9, 1980, August 26, 1980, and September 15, 1980, and concluded that claimant was not capable of engaging in gainful employment due to his back injury.

(B) In a report dated November 6, 1980, Dr. Curwood Hunter states that claimant has a "herniated intervertebral disc at L5–S1 on the right side." Dr. Hunter also states that the claimant will not recover without surgical intervention.

(C) In a report dated December 3, 1980, Dr. Phillip Tibbs found no evidence of a herniated disc and instead diagnosed claimant as having a "chronic right lumbar facet syndrome." Dr. Tibbs did not recommend surgical intervention.

(D) In a letter dated January 7, 1981, Dr. Hunter states that claimant will continue to be permanently disabled in the absence of surgical intervention.

(E) In a letter dated January 27, 1981, Dr. Ben Wiltberger diagnoses claimant as having "a very definite herniation nucleus pulposus, probably at L–4, L–5. With L–5 nerve root compression on right." Dr. Wiltberger suggests that claimant have a partial hemilaminectomy and a spinal fusion.

(F) In a letter dated July 7, 1981, Dr. Robert Lowe diagnoses claimant as having a ruptured disc. He further states that "short of successful surgery, Mr. Fraley is 100% disabled for employment for a period of time exceeding 12 months from the time of my examination forward."

(G) In a letter dated July 27, 1981, Dr. Lowe again diagnosed claimant as having "a retained ruptured disc or at least a degenerated disc, probably at L/5/S/1 on right." Dr. Lowe recommended that claimant have a repeat myelogram and exploratory surgery. He expressed some caution, however, in his prognosis:

Whether this would get him back to work or not is an entirely different question, but without it I do not think that I can achieve a working status.

On the basis of this evidence, the ALJ determined that the claimant no longer suffered from a severe impairment. The ALJ also stated, however, that the claimant had a "significant impairment which is a remedial impairment and could be corrected with surgery." The Appeals Council affirmed the ALJ's decision and explained his reasoning as follows:

The administrative law judge did consider those physicians' *suggestion* that the claimant undergo surgery, but failure of the claimant to do so was not the primary basis for his conclusion. The clinical findings supported the conclusion that the claimant's disability ceased effective October 1980. [Emphasis added].

The district court later ruled that there was substantial evidence to support the Secretary's decision based upon the claimant's failure, without justifiable cause, to follow prescribed medical treatment. This appeal followed:

Our review is limited to whether the Secretary's finding of no disability is supported by substantial evidence on the

record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir.1978). Substantial evidence is that evidence which a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). The claimant's impairment must result from anatomical, physiological or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). In this context, the ALJ is not required to fully credit a claimant's subjective complaints of pain if there is not an underlying medical basis for it. *McCann v. Califano*, 621 F.2d 829, 831 (6th Cir.1980).

■ Upon careful consideration, we first hold that the record does not contain substantial evidence to support the Secretary's finding of no severe impairment. Given the fact that Drs. Hunter, Wiltberger and Lowe made specific findings that claimant had a herniated or ruptured disc, we are at a loss to explain how the ALJ could have ruled that "[t]he medical evidence fails to document the continuing presence of any incapacitating symptomalogy." In our opinion, the medical evidence both supports a finding of a severe impairment and provides a sufficient underlying medical basis for claimant's subjective complaints of pain. *See* 20 C.F.R. §§ 404.1508, 404.1521 and 404.1529.

■ We also find no substantial evidence to support the ALJ's finding that the claimant had, without justification, refused to follow prescribed treatment. The regulation which discusses a claimant's responsibility to follow prescribed treatment is 20 C.F.R. § 404.1530, which states in pertinent part:

§ 404.1530 NEED TO FOLLOW PRESCRIBED TREATMENT.

(a) *What treatment you must follow.* In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work.

(b) *When you do not follow prescribed treatment.* If you do not follow the prescribed treatment without a good reason, we will not find you disabled or, if you are already receiving benefits, we will stop paying you benefits.

(c) *Acceptable reasons for failure to follow prescribed treatment.* The following are examples of a good reason for not following treatment:

.    .    .    .    .

(4) The treatment because of its magnitude (e.g. open heart surgery), unusual nature (e.g., organ transplant), or other reason is very risky for you;

.    .    .    .    .

While the medical evidence indicates that a hemilaminectomy would probably improve claimant's condition, the record is devoid of any evidence that the proposed surgery would restore claimant's ability to work. *See* 20 C.F.R. § 404.1530(a); *Schena v. Secretary of Health and Human Services*, 635 F.2d 15, 19 (1st Cir.1980). In addition, we agree with the Appeals Council that the surgery was only a suggested course of treatment rather than a prescribed course of treatment. *See Young v. Califano*, 633 F.2d 469, 472–73 (6th Cir.1980). It is not the claimant's burden to undergo any and all surgical procedures suggested by his physician lest he is barred from receiving disability benefits.

Accordingly, the judgment of the district court is reversed and remanded to the district court with instructions that it be further remanded to the Secretary for entry of an order restoring benefits.