770 F.2d 167
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
CHARLES SHAUF, PLAINTIFF-APPELLANT,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, DEFENDANT-APPELLEE.
 NO. 84-5442
 United States Court of Appeals, Sixth Circuit.
 7/3/85
 
 E.D.Tenn.
 REMANDED
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE
 Before: CONTIE and WELLFORD, Circuit Judges; and EDWARDS, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Charles Shauf appeals from the district court order granting summary judgment for the Secretary in Shauf's action challenging the Secretary's decision denying benefits pursuant to 42 U.S.C. Sec. 423. On appeal, Shauf claims that the Secretary's decision is not supported by substantial evidence. For the reasons that follow, we remand the case for further proceedings consistent with this opinion.
 
 
 2
 On June 25, 1982, Charles Shauf, born May 22, 1934, applied for Social Security disability benefits pursuant to 42 U.S.C. Sec. 423 citing back and right arm problems and headaches.[1] Shauf indicated that he could not sweep floors due to back pain and that sitting aggravates his lower back and legs although he walks around, watches television and drives short distances.
 
 
 3
 On August 12, 1982, the claim was denied, and on September 21, 1982, Shauf's motion for reconsideration was denied. Shauf requested a hearing, held on January 18, 1983, at which the following evidence was received.
 
 
 4
 Claimant testified that he went to school through the sixth grade and was 48 years old at the time of the hearing. He testified that he has lower back pain, a stinging in his right leg, and continuous pain in his right arm with two fingers being numb. Claimant injured his back in 1965 (requiring 1-1/2 months off work), 1972 (no break in employment) and in 1980 when he ceased working. From 1951 to 1977, claimant worked in the tool and die business moving heavy dies. Claimant testified that he could not return to that job in his current condition. From 1977 to 1980, claimant worked in dairy farming.
 
 
 5
 In May 1982, Claimant underwent surgery on his wrists for carpal tunnel syndrome, but testified that the surgery was unsuccessful and that he still had pain in both wrists. Claimant testified that his physician, Dr. Baker, recommended a lumbar laminectomy. However, 'I put it off until I see how my wrist turned out. They ain't turned out so hot so I don't know.' With respect to the laminectomy, claimant testified that 'I've talked to different doctors. I've talked to different people and I was getting different answers how they turned out.' Further, 'I talked to two doctors and they wanted to do two different operations. And I've talked to different people and they said ninety percent of the time they don't work.'
 
 
 6
 Claimant was treated for at least two years by William J. Gutch, M.D. On August 25, 1980, Gutch diagnosed chronic low back strain, right sciatica, and tenderness over the lumbrosacral joint. On October 13, 1980, Gutch noted decreased sensation of the little and ring fingers of the right hand. In April 1981, Gutch found osteophyte formation at the C5, 6 level posteriorly, and diagnosed such as 'probable degenerative cervical spine with cervical radiculitis.' In a report dated January 27, 1981, Gutch found claimant totally disabled and incapable of sede tary work due to a probable herniated lumbar disc.
 
 
 7
 In an April 1982 exam, Martin Baker, M.D. ruled out a ruptured disc and observed 'a rather markedly positive right straight-raising examination.' On May 13, 1982, claimant underwent the bilateral carpal tunnel release for his wrists. On May 10, claimant underwent an epidural venogram which concluded that the '[r]ight side at L-5 level is difficult to evaluate because of variation in distribution of the veins. However, there is suggestion of lateral displacement suggesting that there may well be a disc disease at that level.' On May 11, 1982, a myelogram proved negative.
 
 
 8
 A physical capacities evaluation by Cloyce Bradley, M.D., on August 9, 1982, indicated that claimant could lift fifty pounds occasionally and twenty-five pounds frequently, and could stand, walk, or sit six hours each day. Bradley found that claimant had a residual functional capacity for medium work and that any disability related to his wrists would not continue for twelve months.
 
 
 9
 In notes of May 19, 1982, Baker indicated as follows:
 
 
 10
 I feel that he has a bona fide bulging disc on the right at the lumbosacral junction as indicated on the epidural venogram, performed while he was hospitalized at Presbyterian Hospital, on 5/10. He apparently is willing to consent to a lumbar laminectomy. I discussed it at length with him and Mrs. Shauf in the office today. In my opinion, within reasonable medical certainty, this condition stems from his injury alleged March 28, 1980. I believe that he should be materially helped by a successful lumbar laminectomy and I offered it to him in the office today. He is to consider it, speak with his attorney concerning the financial aspect of it and I invited him to call back regarding scheduling at the time of his choosing. He should remain off work in the intervening time interval, both because of the back and because of the healing wrist wounds.
 
 
 11
 Further, in the letter of January 27, 1983, Baker indicated:
 
 
 12
 Mr. Shauf is totally disabled from gainful employment at this time. His disability has been continuous for the past 12 months and is not likely to improve in the next 12 months, unless something is done about his physical condition. Whether or not a lumbar laminectomy would return this man to gainful employment, depends on how successful the surgery is. The risk actually to this gentlemen is not very considerable, being only those involving general anesthesias with even any reasonable degree of success, this mans back and leg could be better enough that he could get back to some degree of productive activity. I would not consider the risk factor, as far as being made any worse or to his life, any consideration at all.
 
 
 13
 In a communication of February 14, 1983, Dr. Gutch also expressed the belief that claimant is totally disabled and could not be gainfully employed. 'His condition is progressive and in all probability will worsen with time.' In a letter of July 26, 1983, Baker indicated '[w]hether or not he is disabled at this time is very difficult for me to determine and/or document.'
 
 
 14
 On June 24, 1983, the ALJ denied benefits. The ALJ concluded that claimant could not perform his past work but could perform sedentary work. The ALJ concluded that claimant has 'at worse a mild back condition,' and disregarded Dr. Baker's conclusions due to the negative myelogram. Further, citing 20 C.F.R. Sec. 404.1530, the ALJ concluded that '[t]he evidence does not show that the claimant has an acceptable reason for failure to follow the prescribed treatment. . . .' The ALJ also discounted to a large extent Dr. Gutch's conclusion that claimant was disabled since Gutch saw claimant very little after the Appeals Council denied claimant's first application in early 1982. Applying Rule 201.19 of the grid, the ALJ concluded that claimant was not disabled.
 
 
 15
 On November 22, 1983, the Appeals Council denied review, and on April 23, 1984, the district court ruled in favor of the Secretary. The court held that '[p]laintiff's refusal to have back surgery was a factor to be considered in determining whether plaintiff's back condition was as serious as plaintiff proposed.'
 
 
 16
 The ALJ's findings should not be overturned unless there is no substantial evidence to support such findings. Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 535 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983).
 
 
 17
 20 C.F.R. Sec. 404.1530(a) provides that '[i]n order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work.' Subsection (b) provides in pertinent part that '[i]f you do not follow the prescribed treatment without a good reason, we will not find you disabled. . . .' In order to deny benefits on this ground, the evidence must show that (1) the surgery would restore claimant's ability to work, (2) the surgery was prescribed, (3) claimant refused the surgery, (4) such refusal was willful. Schena v. Secretary, 635 F.2d 15, 19 (1st Cir. 1980). The likelihood of success, the consequences of failure, the availability of alternative treatment, the severity of the ailment, the physician's outlook, and claimant's age, history and background should be considered. Schena, 635 F.2d at 19; Nichols v. Califano, 556 F.2d 931, 933 (9th Cir. 1977).
 
 
 18
 Denial of benefits on the ground that a claimant has willfully refused to follow prescribed treatment involves consideration of peculiarly factual questions and fine factual distinctions. For courts have held that merely because surgery is recommended or suggested does not mean that it is 'prescribed,' Fraley v. Secretary, 733 F.2d 437, 440 (6th Cir. 1984); Young v. Califano, 633 F.2d 469, 473 (6th Cir. 1980), and, while '[a] reasonable fear may justify the refusal of treatment,' Schena, 635 F.2d at 19, 'wholly unsubstantiated and subjective apprehensions on the part of a claimant do not constitute 'good reason." Awad v. Secretary of Health and Human Services, 734 F.2d 288, 290 (6th Cir. 1984).
 
 
 19
 The ALJ's reference to claimant's refusal to undergo a laminectomy appears little more that an afterthought to his decision that no showing of disability had been made. The ALJ does not indicate that claimant's refusal was willful or that the surgery would have restored his ability to work. Further, no factual basis is cited for the ALJ's conclusions that the treatment was 'prescribed' and that claimant had no 'good reason' to refuse surgery. We decline to make these factual findings, and, accordingly, remand to the district court with instructions to remand to the Secretary to make such findings.
 
 
 20
 A finding of willful refusal to follow prescribed treatment which would restore the ability to work requires a denial of benefits regardless of claimant's condition at the time of such refusal. 20 C.F.R. Sec. 404.1530(b). Accordingly, we decline to consider at this time claimant's contention that the ALJ's conclusion that he is not disabled is not supported by substantial evidence.
 
 
 21
 Accordingly, we remand for further proceedings consistent with this opinion.
 
 
 22
 EDWARDS, Senior Judge, dissenting.
 
 
 23
 I dissent from the majority's disposition of this case and would reverse and remand for an award of benefits on the ground that the Secretary's conclusion that claimant is not disabled is not supported by substantial evidence.
 
 
 
 [1]
 Following his claimed back injury in 1980, Shauf applied for social security benefits and his application was denied September 24, 1981 by an Administrative Law Judge. This decision became final on January 8, 1982. Since Shauf did not challenge this decision, its validity is not before us. He cannot in any event obtain benefits prior to January, 1982, on his subsequent June, 1982 application, which is the subject matter of this appeal (based on the claim that his condition had worsened since 1982)