**Julia ELDRIDGE, Plaintiff,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.**

No. C–2–89–0373.

United States District Court, S.D. Ohio, E.D.

Oct. 30, 1989.

Neal J. Barkan, Barkan & Barkan Co., L.P.A., Columbus, Ohio, for plaintiff.

J.E. Kane, Asst. U.S. Atty., Columbus, Ohio, for defendant.

## OPINION AND ORDER

GRAHAM, District Judge.

Plaintiff, Julia Eldridge, filed this action seeking review of a final decision of the Secretary of Health and Human Services ("Secretary") denying her applications for social security disability insurance benefits and supplemental security income benefits. Her applications, filed on August 4, 1987, alleged that she became disabled on October 27, 1986 as a result of high blood pressure.

After initial administrative denials of her claim, plaintiff was afforded a hearing before an Administrative Law Judge on December 13, 1988. In a decision dated January 6, 1989, the Administrative Law Judge denied benefits. That decision became the final decision of the Secretary when the Appeals Council denied review on March 31, 1989.

Plaintiff thereafter timely commenced this civil action. The record of administrative proceedings was filed in this Court on June 30, 1989. Plaintiff moved for summary judgment on July 31, 1989 and the Secretary responded on August 21, 1989. No reply brief has been filed.

Plaintiff, who was 48 years old at the time of the administrative hearing, testified to the following. She did not complete high school, but did attend special education classes and is able to read and write to some extent. (Tr. 51–52). She was last employed at the Salvation Army in Lancaster, Ohio, doing various jobs such as cleaning, setting up for meetings, and babysitting for army officers. (Tr. 53). She had worked at that location for approximately 12 years, working 24 hours per week. (Tr. 54). The job required her to lift up to 50 pounds and involved mostly standing or walking throughout the workday. (Tr. 55).

Plaintiff currently has vision problems due to cataracts. She has difficulty seeing in bright light and reading. (Tr. 57). She has diabetes, but does not take medication for that condition. She does take medication for high blood pressure. (Tr. 58). She has been told by a doctor that she has kidney problems related to her high blood pressure.

Plaintiff has knee problems, including pain and occasional collapse of the knee. (Tr. 60). She is able to do grocery shopping and tries to walk several times a week. (Tr. 60–61). She is able to do housework. (Tr. 61–62).

Plaintiff assessed her abilities as follows. She can walk about one block and stand 15 to 20 minutes at a time. (Tr. 63). She has recently developed a problem with dizziness that affects her ability to stand. *Id.* She does not have any difficulty sitting. (Tr. 64). Sometimes, however, she experiences pain in her knees and back from sitting. (Tr. 74–75). She also gets headaches two to three times per week. (Tr. 70).

Pertinent medical records reveal the following. Plaintiff was seen by Dr. Bay, a kidney specialist, who reported on March 17, 1986 that plaintiff suffered from glomerulonephritis with the nephrotic syndrome. Dr. Bay admitted her to the hospital on April 14, 1986 for a percutaneous renal biopsy, which confirmed his diagnosis of membranous glomerulonephritis. She was treated with steroids, and his reports of May 15, June 17, and August 19, 1986 indicate that her condition had improved with medication. (Tr. 153–60).

At the request of the Social Security Administration, plaintiff was evaluated by Dr. Miller, a psychologist, on September 19, 1987. He noted that plaintiff exhibited moderate nervousness, tenseness and depression at the interview. She was very depressed and upset at that time and cried excessively. He believed that she was generally alert, and that her concentration was fair. Testing demonstrated a full-scale IQ of 72. He concluded that she could understand, recall and carry out simple instructions, was able to interact with others, and had adequate concentration and attention, although she was unable to deal with stress. He concluded that she suffered from borderline intellectual functioning, depressive neurosis, and a dependent person-

ality disorder, and that she had a marked impairment in her ability to function in a competitive occupational setting. (Tr. 168–72).

Dr. Ruff, plaintiff's treating physician, responded to a Social Security questionnaire dated February 5, 1988. His response indicated plaintiff had no limitation of motion in any of her major joints and that her diabetes was well-controlled. He concluded, however, that she had a severe anxiety state which would preclude her from working. (Tr. 194–95).

Dr. Ruff completed a physical capacities evaluation on July 1, 1988. In that report, he stated that plaintiff could stand or walk for two hours and sit for three hours during a workday, could lift 11 to 20 pounds occasionally, was able to use her hands and feet, could bend, squat and climb occasionally, was able to reach above shoulder level with both arms, but had limits on her agility due to obesity. He believed that it was hard for her to learn new work procedures. (Tr. 215–16).

Plaintiff was seen consultively by Dr. Morris who reported on August 10, 1988, that plaintiff had a fifteen year history of high blood pressure. She also suffered from borderline diabetes. She reported leg cramps and pain in her knees and problems with cataracts. He noted mild swelling and tenderness in her knees, and his impression was high blood pressure poorly controlled, borderline diabetes, osteoarthritis of the knees secondary to obesity, cataracts, and emotional problems. He believed that most of her restrictions arose from her obesity and arthritis, and limited her to four hours of standing per day, not more than two hours at a time. He did not believe she had any difficulty sitting. (Tr. 225–26).

Shortly before the administrative hearing, plaintiff's attorneys referred her to Dr. May, an osteopath, for an evaluation. Dr. May examined plaintiff on December 1, 1988. She reported essentially the same complaints to him that are described in Dr. Morris' report. Dr. May noted the existence of crepitus in her left knee and soft tissue swelling around both knees. She

also had a limited range of motion in the knees. He diagnosed degenerative osteoarthritis in both knees by x-ray. Although plaintiff's full-scale IQ, as previously tested, was 72, Dr. May expressed his opinion that plaintiff's impairment was the equivalent of the impairment listed in Section 12.05(C) of the Listing, which provides for a presumption of disability when a claimant has an IQ of 69 or less and has other significant work-related impairments. (Tr. 237–40).

In addition to the medical evidence, the Secretary took vocational evidence through the testimony of a vocational expert, Mr. Rosenthal. Mr. Rosenthal testified that plaintiff's past work was unskilled in nature and medium in exertional level. (Tr. 81). Based upon certain assumptions about her current physical capacity, he believed that she could not perform her prior work. (Tr. 82). However, based upon an assumption that plaintiff had the physical capacity as described by Dr. Ruff, with the exception that there was no limit on her ability to sit, and that she had a mental residual functional capacity essentially in accordance with the examination performed by Dr. Miller, Mr. Rosenthal concluded that she could perform various jobs which existed in the economy, including food preparer, packager, assembler, and material cutter. (Tr. 84–88). He reduced the number of available jobs somewhat because of her vision problem, which might exclude altogether her work as a material cutter, but he still believed that there were jobs she could perform. (Tr. 89).

Based upon the above evidence, the Secretary concluded that plaintiff suffered from severe impairments best described as severe hypertension, diabetes mellitus, nephrotic syndrome, obesity, osteoarthritis of both knees, gouty arthritis of the right great toe, bilateral cataracts, borderline intelligence, depressive neurosis, and a dependent personality disorder. He concluded that she had the residual functional capacity to lift up to 20 pounds, to stand and walk for four hours total during a workday, two hours at a time, and was not limited in her ability to sit. She was fur-

ther limited in her ability to read fine print, to follow detailed job instructions, to work in a job which required a prolonged amount of attention or concentration, to work independently, and to interact with the public. He did not believe she could do her past work, but based upon the testimony by the vocational expert, concluded that she could perform jobs which existed in significant numbers in the economy and was therefore not disabled. He rejected her argument that she met or equaled Listing 12.05(C) because her IQ was not 69 or less as required by the Listing.

In her motion for summary judgment, plaintiff raises a number of arguments, all of which grow out of her contention that the Secretary improperly concluded that she did not meet or equal Listing 12.05(C). She contends that, based upon the current record, the Secretary either should have so concluded or should have obtained an updated opinion from a medical adviser as to whether her impairments were the medical equivalent of the listed impairment. Consequently, she asserts that the Secretary's decision is not supported by substantial evidence.

■ *Standard of Review.* Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion' " *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). It is " 'more than a mere scintilla.' " *Id. LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir.1976). The Secretary's findings of fact must be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.1985); *Houston v. Secretary*, 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439–440 (6th Cir.1984). In determining whether the Secretary's decision is supported by substantial evidence, the Court must " 'take into account whatever in the

record fairly detracts from its weight.' " *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir.1985). Even if this Court would reach contrary conclusions of fact, the Secretary's decision must be affirmed so long as his determination is supported by substantial evidence. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

■ The applicable Listing requires that the claimant establish two things: an IQ of less than 69, and other significant impairments in the ability to perform work-related functions. It is undisputed that the only full-scale IQ test in the record revealed an IQ of 72. Plaintiff relies on Social Security Ruling 83–19 in support of her argument that the Secretary should have found her impairment to be the equal of the listed impairment. That regulation, however, indicates that the Secretary will conclude that an impairment is the medical equal of a listed impairment if one of the required findings is missing but other findings of equal or greater significance relating to the *same* impairment are present, the impairment is not listed but is the medical equivalent of the listed impairment, or the combination of the claimant's impairments are the medical equivalent of a listed impairment. None of those three conditions were satisfied in this case.

Clearly, the one finding which was missing related to the IQ score of the plaintiff. Although the record is replete with other evidence of other significantly restrictive *physical* conditions, there are no other findings on this record of equal or greater significance relating to her IQ than the IQ test itself. Similarly, plaintiff suffers from a listed impairment, so that the portion of the Ruling relating to unlisted impairments is inapplicable. Her only argument, therefore, is that she suffers from a combination of impairments which are the medical equivalent of a listed impairment. The

Court does not believe that argument to have merit, however.

 In this case, the applicable Listing itself is a combination of impairments. The combination requires both an impaired intellectual functioning level demonstrated by an IQ test, and other significant physical restrictions. The physical restrictions clearly are present. The mental impairment portion of the Listing has not been met. The Secretary was consequently entitled to conclude that plaintiff's combination of impairments was simply a condition described in the Listing, but not of Listing severity. The Court does not believe that a Listing which has both mental and physical components can be met where the mental component is not satisfied, but the physical restrictions may be greater than the minimum level contemplated in the Listing. Although the physical impairments may themselves rise to the level of being disabling, the Court does not believe that a claimant can ever satisfy a Listing which expressly contemplates a combination of mental and physical impairments purely on the strength of the physical impairments alone. Under such circumstances, the proper approach is to assess the claimant's residual functional capacity taking into account both the mental and physical impairments, and to determine whether, based on vocational evidence, the claimant is disabled. That is precisely what the Secretary did in this case.

 The only other issue raised by plaintiff is that an updated medical evaluation was necessary to determine equivalency. The record does contain a number of reports from non-examining medical experts stating that plaintiff did not have an impairment of Listing severity. *See, e.g.,* Tr. 206, a medical review performed by psychologist Vickie P. McCreary indicating that plaintiff did not meet or equal the Listing. It is not clear whether Dr. McCreary considered Listing 12.05(C) specifically. The Court does not believe, however, that the Secretary was required to obtain such a "paper" medical review in this case where one of the components of the Listing is an objective IQ measurement

which clearly has not been met. Although in some cases the medical evidence requires medical interpretation to determine whether it meets the Listing, *see Todd v. Heckler,* 736 F.2d 641 (11th Cir.1984), the Court does not believe that in this case, where no such interpretation is required, the Secretary is obligated to obtain medical expert testimony on that issue.

 Plaintiff has raised no other issues relating to the substantial nature of the evidence in support of the Secretary's conclusion that she can perform jobs which exist in significant numbers in the economy, and the Court's independent review of the record reveals that the evidence in support of that conclusion is of sufficient quantity and quality to meet the "substantial evidence" test. Consequently, the Secretary's decision will be affirmed.

Based upon the foregoing, it is ordered that:

1. The Plaintiff's motion for summary judgment is DENIED.

2. The Defendant's motion for summary judgment is GRANTED.

3. The Clerk of Court shall enter judgment in favor of the Defendant.