915 F.2d 1570
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Harold BALL, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 89-4049.
 United States Court of Appeals, Sixth Circuit.
 Oct. 10, 1990.
 
 Before KENNEDY and RALPH B. GUY, Jr., Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Claimant, Harold Ball, appeals from a denial of social security disability benefits. Ball's claim, which is based on back problems, psychogenic pain, and depression, was denied at all levels administratively. The administrative law judge (ALJ) found that although Ball suffered from an impairment that kept him from doing his past relevant work, he still retained the residual functional capacity to do sedentary work of a type which was available in the national economy. Upon appeal to the district court, the Secretary's denial of benefits was affirmed and this appeal followed.
 
 
 2
 We conclude that substantial evidence supports the Secretary's decision and we affirm, but for reasons different than those relied upon in the district court.
 
 I.
 
 3
 Ball was 43 years of age at the time of his administrative hearing and had a twelfth-grade education. He had worked for the last eleven years as a machine operator, a job that was semi-skilled and medium to heavy in its exertional requirements. Claimant first injured his back in May of 1985 when he fell down a flight of stairs at work. Four months later he sustained a whiplash-type injury in an auto accident. Ball returned to work after both of these accidents but on October 31, 1985, reinjured his back while pushing a heavy cart at work and has not worked since.
 
 
 4
 Although Ball's back problems are such that they would prevent him from returning to his old job, he does not argue that they alone are disabling insofar as his capacity to perform a limited range of sedentary work is concerned. Therefore, we do not need to detail our review of the extensive medical records dealing with his back problems. In the course of treatment for his back problems, Ball complained of extensive and allegedly disabling pain. Since the doctors treating the back problems could not find an objective medical basis for the claim of such extensive pain, Ball was referred to other medical personnel for psychological and psychiatric evaluations. Several examinations were conducted by different doctors, and although there are some differences in the conclusions reached, the differences relate more to degree than kind. A fair summary of what emerges from the reports is as follows: Ball had bouts of depression which occasionally triggered suicidal thoughts; he often felt worried or angry and would sometimes experience crying episodes;[1] although his reading ability exceeded a twelfth-grade level, he possessed only seventh-grade spelling and arithmetic abilities; his IQ test scores placed him slightly below average; and clinical testing supported his claims of depression and revealed a large amount of somatic concern.
 
 
 5
 During his mental status exams, Ball was oriented in all spheres and in contact with reality. While his thoughts were dominated by physical concerns, there was no evidence of hallucinations, delusions, or paranoia. Ball had limited insight but adequate judgment. He had good remote, recent, and immediate memory. Ball could comprehend and follow simple instructions and sustain attention for reasonable periods of time, although interacting with co-workers and supervisors might present a problem. A Minnesota Multiphasic Personality Inventory (MMPI) test revealed Ball to be a self-centered, complaining, and emotionally labile individual, who attempted to depict himself as both acutely and chronically distressed to a severe degree, and who tried to portray himself as experiencing acute and severe cognitive impairments.
 
 
 6
 Ball's own testimony at the hearing reveals a person who does little around the house except read and watch television, drives a car when necessary, and goes fishing for recreation. He complained of a variety of aches and pains, and claimed an inability to lift almost anything of any weight.
 
 
 7
 It appears beyond dispute from the foregoing that Ball does suffer from a psychogenic pain disorder. The issue thus comes down to whether the psychogenic pain disorder singly, or in combination with claimant's back problems, renders him unable to perform any substantial gainful employment. Before attempting to answer this question, it is necessary to review the manner in which this case was disposed of in the district court.
 
 II.
 
 8
 The district court referred this matter to a magistrate who wrote a lengthy report which primarily reviewed and detailed the medical evidence of record. Although it appeared in the report that the magistrate might be heading in the direction of finding substantial evidence to support the Secretary's decision, the recommendation to affirm was actually bottomed on a different ground. The magistrate stated:
 
 
 9
 However, the record does not show that Plaintiff received any treatment for his pain or his depression. He was recommended twice to go to a pain clinic. It was recommended that he receive psychotherapy. There is no evidence that he did any of these.
 
 
 10
 In order to receive benefits, an individual must follow treatment prescribed by his physician if the treatment will restore the ability to work, unless there is an acceptable reason for the failure to follow the treatment. 20 C.F.R. Sec. 404.1530 (1983); See Awad v. Secretary of H.H.S., 734 F.2d 288 (6th Cir.1984); Fraley v. Secretary of H.H.S., 733 F.2d 437 (6th Cir.1984). If an impairment can reasonably be controlled, or is reasonably amenable to treatment, it cannot serve as a basis for a finding of disability. Young v. Califano, 633 F.2d 469, 472-73 (6th Cir.), cert. denied, 389 U.S. 993 (1967); Mefford v. Gardner, 383 F.2d 748, 761 (6th Cir.1967).
 
 
 11
 We have no evidence that Plaintiff's mental impairments are not amenable to treatment.
 
 
 12
 The district judge did not specifically refer to the "failure to treat" issue, but simply adopted the magistrate's report and recommendation.
 
 
 13
 Under the circumstances presented here, we must reject this rationale for sustaining the Secretary.[2] Although it is black-letter law in social security cases that "[a]n impairment that can be remedied by treatment will not serve as a basis for a finding of disability[,]" see, e.g., Henry v. Gardner, 381 F.2d 191, 195 (6th Cir.), cert. denied, 389 U.S. 993 (1967), there is nothing in the record to show that claimant's problems would have been remedied by treatment. Furthermore, this is not a case where there was a failure to follow prescribed treatment. The doctors with whom claimant consulted regarding his mental state were doctors to whom he had been sent for evaluation by his attorney or by the Secretary. They were not treating physicians. Although they opined that Ball would benefit from psychotherapy, none "prescribed" psychotherapy in the sense that a failure to follow through would result in a loss of a claim for disability benefits.[3]
 
 III.
 
 14
 We now turn to an examination of the Secretary's regulations as they bear on the proper resolution of the psychogenic pain issue. Ball argues that the ALJ, pursuant to the regulations, was required to fill out a Psychiatric Review Technique Form (PRTF) in a case where a mental impairment is claimed. 20 C.F.R. Sec. 416.920a (1990). The ALJ did fill out the form, and Ball claims that the ALJ's assessment of Ball's functional limitations dictates a finding of disabled.
 
 
 15
 There is a section of the PRTF that is entitled "Functional Limitation and Degree of Limitation." In responding to the question asked in this portion of the form, the ALJ indicated that claimant had: (1) slight restrictions in daily living activities; (2) no difficulties in social functioning; (3) infrequent deficiencies in concentration; and (4) repeated episodes of deterioration or decompensation in work or work-like settings. The ALJ indicated on the form that the repeated episodes of deterioration or decompensation met the Listings and then responded to the final question as follows: "NUMBER OF FUNCTIONAL LIMITATIONS MANIFESTED AT THE LISTINGS LEVEL:--." The PRTF then goes on to state: "(The number must be at least 2 to satisfy the requirements of paragraph B in Listings 12.02, 12.03, 12.04, and 12.06 and paragraph D in 12.05; and at least 3 to satisfy the requirements in paragraph B in Listings 12.07 and 12.08.)" (App. at 24). Despite the above-quoted language, Ball argues that since one facet of his functional limitations met the listings, he should be found to be disabled. We reject this argument.
 
 
 16
 The Secretary's regulations divide mental disorders into eight listed categories. 20 C.F.R. Part 404, Subpt. P, App. 1, Listing 12.00(A). Ball's mental impairments place him in the category of "affective disorders." Listing 12.04, which covers affective disorders, provides that "[t]he required level of severity for these disorders is met when the requirements in both A and B are satisfied." The "A" requirements cover "depressive syndrome" that fits Ball's condition, and mandate that at least four of nine listed symptoms be present. Without enumerating all nine symptoms, suffice it to say that Ball met the "four symptoms" requirement. Part B, which is reflected in the PRTF, lists the four categories of functional limitations previously discussed.[4] Of the four listed categories, Ball meets only one--repeated episodes of deterioration or decompensation in work or work-like settings. Since the requirement is clearly that two part B regulations must be met, Ball does not qualify to be classified as disabled pursuant to the listings.
 
 
 17
 This does not end the inquiry, however, as the ALJ must still assess the claimant's residual functional capacity even if he does not meet the listings. This was done here, and as we have indicated, we find substantial evidence to support the Secretary's determinations that Ball retains the residual functional capacity to perform a limited range of sedentary work and that a job within that range exists in the national economy.
 
 
 18
 AFFIRMED.
 
 
 
 [1]
 These, of course, are subjective findings based on the history given by claimant. The suicidal ideation ceased after Ball began taking Elavil
 
 
 [2]
 We also reject the Secretary's position on appeal that, under Thomas v. Arn, 474 U.S. 140 (1985), the claimant is precluded from raising his mental impairment arguments on appeal because he did not allude to these contentions in his objections filed to the magistrate's report and recommendation. Since the magistrate made no determinative recommendation on the mental impairment issue, there was nothing to which an objection could be placed
 
 
 [3]
 Notwithstanding our rejection of the district court's precise rationale, in the interest of judicial economy, we shall not remand since we have the same record before us as did the district court
 
 
 [4]
 20 C.F.R. Part 404, Subpt. P, App. 1, Listing 12.04(B) provides as follows:
 B. Resulting in at least two of the following:
 
 
 [1]
 Marked restriction of activities of daily living; or
 
 
 [2]
 Marked difficulties in maintaining social functioning; or
 
 
 [3]
 Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or
 
 
 [4]
 Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors)