James WOOTEN, Plaintiff,

v.

Kenneth S. APFEL, Defendant.

No. 3:99–CV–296.

United States District Court,
E.D. Tennessee,
at Knoxville.

May 19, 2000.

Julie L Atkins, Law Office of Julie Atkins, Harlan, KY, for plaintiff.

Karl K. Kirkpatrick, U.S. Atty., Loretta Harber, Asst. U.S. Atty., Brian Seinberg, Asst. Regional Counsel, Social Security Administration, Knoxville, TN, for defendant.

## ORDER

COLLIER, District Judge.

In this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff James Wooten's applications for disability insurance benefits and supplemental security income benefits under the Social Security Act, 42 U.S.C. §§ 1396, et seq., Wooten objects to United States Magistrate Judge Robert P. Murrian's report and recommendation (Court File No. 15) recommending Wooten's motion for summary judgment be denied and that the Commissioner's motion for summary judgment be granted.

Having carefully considered Magistrate Judge Murrian's report and recommendation and Wooten's objections (Court File No. 16), the Court makes a de novo determination upon those objections and accepts and adopts Magistrate Judge Murrian's findings of fact, conclusions of law, and recommendations pursuant to 28 U.S.C. § 636(b)(1) and *Fed.R.Civ.P.* 72(b) and **DENIES** Plaintiff's motion for summary judgment and **GRANTS** Defendant's motion for summary judgment.

Wooten makes three specific objections to Magistrate Judge Murrian's report and recommendation. First, Wooten argues Magistrate Judge Murrian inappropriately applied retroactively the Social Security regulation deleting Listing 9.09, "Obesity" from the Listing of Impairments at 20 C.F.R. Subpart P, Part 404, Appendix 1. Second, Wooten contends the overwhelming weight of the opinions of the treating and examining mental health evaluators support a residual functional capacity which was not reflected in the hypothetical on which the Administrative Law Judge relied. Last, Wooten objects to Magistrate Judge Murrian's conclusion no residual restrictions remained from Wooten's seizure disorder.

In making his recommendations in this case, Magistrate Judge Murrian had to determine what if any effect the deletion by the Social Security Administration of the Obesity Listing 9.09 had on Wooten's case. Deletion of this listing was one of the changes brought about by new regulations that became effective on October 25, 1999. *See* 64 FED. REG. 46122 (1999). As one of the first members of the judiciary to face this issue, Magistrate Judge Murrian thoroughly discussed the retroactive effect of these new regulations. Magistrate Judge Murrian's opinion is well-reasoned and complete and no purpose would be served by merely duplicating his opinion. Consequently, the Court **DENIES** Plaintiff's objections and accepts and adopts the report and recommendation in full.

Accordingly, the Court **ORDERS:**

(1) Plaintiff's motion for summary judgment (Court File No. 11) is **DENIED.**

(2) Defendant's motion for summary judgment (Court File No. 13) is **GRANTED.**

**SO ORDERED.**

## REPORT AND RECOMMENDATION

MURRIAN, United States Magistrate Judge.

This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b),

Rule 72(b), Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding the disposition by the District Court of the plaintiff's and defendant's motions for summary judgment [*see* Docs. 11 and 13]. The plaintiff, James Wooten, seeks judicial review of the final decision of the Commissioner denying his applications for disability insurance benefits and supplemental security income benefits under the Social Security Act.

The plaintiff filed his first application for benefits on August 24, 1993 (Tr. 78–81), alleging that he became disabled on January 2, 1991, due to a seizure disorder; side effects from medication, including forgetfulness and chronic sleepiness; headaches; and difficulty walking (*see* Tr. 107). His application was denied initially (Tr. 82–83) and upon reconsideration (Tr. 86–87). Plaintiff then requested and was granted a hearing before an Administrative Law Judge ("ALJ") on April 4, 1995. On May 8, 1996, the ALJ denied plaintiff's claim (Tr. 219–227). On July 2, 1997, the Appeals Council granted the plaintiff's request for review and vacated and remanded this case to the ALJ for resolution of the extent of the plaintiff's limitation in concentration; the lack of medical support for a finding that the plaintiff retained the residual functional capacity to perform medium work; to give further consideration to the plaintiff's residual functional capacity; and to obtain evidence from a vocational expert (Tr. 236–237). Prior to the Appeals Council decision remanding this case, the plaintiff filed a second application for benefits on July 24, 1996 (Tr. 288–291), alleging that he became disabled on January 2, 1991, because he must use a cane when climbing stairs and walking; he is limited in memory; and he has seizures, headaches, a depressive disorder, leg pain, and anxiety (Tr. 296). Plaintiff was given another hearing before an ALJ on April 7, 1998, at which time both of plaintiff's applications for benefits were considered. On May 22, 1998, the ALJ again denied the plaintiff's claims (Tr. 20–28). The Appeals Council denied plaintiff's request for review on March 31, 1999 (Tr. 13–14) and the April, 1998, decision became the final decision of the defendant Commissioner.

The plaintiff moves the court for an order granting summary judgment in his favor, contending that the ALJ/Commissioner erred in failing to consider whether he meets Listing 9.09A and/or 9.09D; that the ALJ/Commissioner erred in rejecting the medical assessment of Dr. Pierce Nelson; that the ALJ/Commissioner erred in posing an inaccurate hypothetical question to the vocational expert; and that the ALJ/Commissioner erred in rejecting his credibility [Doc. 12].

The Commissioner responded to the plaintiff's motion with a cross motion for summary judgment, contending that his decision that the plaintiff can perform the jobs identified by the vocational expert is supported by substantial evidence on the record as a whole [Doc. 14].

The plaintiff was 37 years old at the time of the ALJ's decision. He has a high school education and has been trained as a refrigeration technician at a community college. His past relevant work was as a machinist in the Navy and a dock worker.

The plaintiff contends that the ALJ/Commissioner erred in failing to consider whether he meets Listing 9.09A or 9.09D.

Effective October 25, 1999, the Social Security Administration deleted Listing 9.09, "Obesity," from the Listing of Impairments at 20 C.F.R. Subpart P, Part 404, Appendix 1. *See* 64 FR 46122, 1999 WL 637689 ("Revised Medical Criteria for Determination of Disability, Endocrine System and Related Criteria" August 24, 1999). The Administration determined that

> because of the widely varying effects obesity and related impairments may have on an individual's functioning, the only way we could be confident that individuals would be disabled under the listings would be to require the other

impairments to meet or equal the severity of their respective listings....

64 FR 46122, 46123. The Administration has not removed obesity as a consideration in determining disability, however, and has added

> guidance about the evaluation of claims for benefits involving obesity to the prefaces of the musculoskeletal, respiratory, and cardiovascular body system listings. Our purpose in making these changes is to ensure that adjudicators understand that we consider obesity to be a medically determinable impairment that can be the basis for a finding of disability, and that obesity in combination with other impairments must be considered when evaluating disability at the listings step and other steps of the sequential evaluation process....

64 FR 46122, 46123. Thus, new paragraphs 20 C.F.R. Subpart P, Pt. 404, Appendix 1, § 1.00F. (musculoskeletal system), 3.00I. (respiratory system), and 4.00F. (cardiovascular system) have been added to the prefaces to the listings for the body systems named. Each of these new paragraphs contains the same language as follows:

> Effects of obesity. Obesity is a medically determinable impairment that is often associated with disturbance of the musculoskeletal system,[1] and disturbance of this system can be a major cause of disability in individuals with obesity. The combined effects of obesity with musculoskeletal[2] impairments can be greater than the effects of each of the impairments considered separately. Therefore, when determining whether an individual with obesity has a listing-

level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity.

64 FR 46122, 46128–46129. The new rules have prospective effect and, therefore, apply to cases pending at the time the rules took effect in October, 1999, see 64 FR 46122, 46127.

■ There is no evidence that either ALJ in this case considered Listing 9.09 as a basis for the plaintiff's possible disability despite the fact that Listing 9.09 remained a valid listing at the time each of the ALJ's had the plaintiff's case before them. In light of the fact the Obesity Listing has been removed, however, the plaintiff's specific argument must be dismissed as without merit.

■ Pursuant to the new regulation guidelines regarding obesity, plaintiff must demonstrate that he meets or equals a musculoskeletal, respiratory, or cardiovascular impairment listed in 20 C.F.R. Pt. 404, Subpart P, Appendix 1. Although the plaintiff had one episode of a deep vein thrombosis in October, 1996 (Tr. 382–383), the thrombosis resolved after five days of heparin therapy in the hospital and there is no evidence that plaintiff suffered any other obstruction of the deep venous system since that time. See 20 C.F.R. Pt. 404, Subpart P, Appendix 1, § 4.11[3]. Additionally, although there is evidence from the examinations of Drs. Gagliardi and Uzzle that the plaintiff had superficial variscosities and chronic venous insufficiency in his lower extremities (Tr. 243; 360),

---

**1.** Substituted for "musculoskeletal system" is "respiratory system" in 3.00I., and "cardiovascular system" in 4.00F.

**2.** See note 1, supra.

**3.** 20 C.F.R. Part 404, Subpart P, Appendix 1, § 4.11 provides the following:
4.11 Chronic venous insufficiency of a lower extremity. With incompetency or ob-

struction of the deep venous system and one of the following:
A. Extensive brawny edema;
OR
B. Superficial varcosities stasis dermatitis, and recurrent or persistent ulceration which has not healed following at least 3 months of prescribed medical or surgical therapy.

there is no evidence of stasis dermatitis or recurrent or persistent ulceration which has not healed after three months of prescribed therapy. A diagnosis of chronic venous insufficiency alone does not mean that the plaintiff's condition meets the severity requirements of Listing 4.11. *Young v. Sullivan,* 911 F.2d 180, 184 (9th Cir.1990). Finally, the record would not support a finding that the plaintiff has "marked limitation of motion" of any joint or gross anatomical deformity of his knees supported by x-ray evidence "of either significant joint space narrowing or significant bony destruction and markedly limiting ability to walk and stand; . . . ." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.03A[4]. Rather, on examination by Dr. Gagliardi in October, 1996, although the plaintiff had obvious patellofemoral crepitation of both knees; he had no joint effusion and full range of motion of his hips, knees, and ankles (Tr. 362). X-rays of both knees showed reasonable joint space in the medial and lateral compartments with only some early degenerative arthritis present. *Id.* Dr. Uzzle found some limitation of motion of the plaintiff's knees and ankles, but the limitation was not significant (*see* Tr. 246). Additionally, both Drs. Gagliardi and Uzzle opined that the plaintiff could work. Dr. Gagliardi opined that plaintiff would have to work at a job that allowed him to sit for six hours per day at two hour intervals; stand/walk two hours per day at one hour intervals; that he must avoid the use of stairs, climbing ladders, bending, squatting, stooping, etc., and that his weight restriction would be 40 pounds or less on a non-repetitive basis occasionally (Tr. 362). Similarly, Dr. Uz-

zle opined that plaintiff could occasionally lift 20 pounds; that he could frequently lift 10 pounds; that he could stand for two to three hours in an eight hour day at less than one hour intervals; that his ability to sit is not affected; that he should never climb, kneel or crawl, that he could occasionally balance or crouch; and that he should not work around heights (Tr. 247–248). These restrictions were posed to the vocational expert who opined that there is work in the national economy for an individual with such limitations.

In light of the foregoing and the new regulation guidelines regarding obesity, I find no error in the ALJ/Commissioner's decision not to award disability benefits based upon an obesity impairment.

Plaintiff contends that the ALJ/Commissioner erred in rejecting the very limiting psychological assessment provided by Dr. Pierce Nelson.

Plaintiff underwent several psychological evaluations. On August 23, 1990, he was evaluated by Dr. Corrine Bell, Licensed Psychologist (Tr. 139–142). Plaintiff was appropriately dressed and well groomed; his hygiene was good; his affect was appropriate; he was rational, alert, and oriented; he interacted in a somewhat immature manner; and his verbal skills were consistent with his measured intelligence (Tr. 139–140). Results of the Wechsler Adult Intelligence Scale ("WAIS–R") demonstrated a verbal I.Q. of 84, a performance I.Q. of 84, and a full scale I.Q. of 82, placing him in the low average range of intellectual functioning. Dr. Bell opined that plaintiff could have performed slightly better, but that his insecurity and uncer-

---

4. 20 C.F.R. Pt 404, Subpart P, Appendix 1, § 1.03 provides
 *Arthritis of a major weight-bearing joint (cue to any cause):*
 With history of persistent joint pain and stiffness with signs of marked limitation of motion or abnormal motion of the affected joint on current physical examination. With:
 A. Gross anatomical deformity of hip or knee (e.g., subluxation, contracture, bony or

fibrous ankylosis, instability) supported by X-ray evidence of either significant joint space narrowing or significant bony destruction and markedly limiting ability to walk and stand; or
 B. Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint and return to full weight-bearing status did not occur, or is not expected to occur, within 12 months of onset.

tainty about his answers interfered with his performance (Tr. 140–141). Results of the Wide Range Achievement Test ("WRAT") showed plaintiff to be reading at the fifth grade level, spelling at the fourth grade level, and performing math at the 8th grade level (Tr. 141). At the conclusion of her evaluation, Dr. Bell opined that the plaintiff is slightly immature and insecure; and that he appeared relatively free of emotional distress (Tr. 141). She further opined that he might be learning disabled. *Id.* In a mental medical assessment, Dr. Bell opined that plaintiff's abilities to make occupational, performance, and personal-social adjustments were all "good" (more than satisfactory) or "unlimited" (not limited by a mental impairment) (Tr. 173–175).

The plaintiff saw Dr. Pierce Nelson, a neuropsychiatrist, on one occasion on April 19, 1995 (Tr. 177–178). Dr. Pierce observed that plaintiff was tense, tight, and uptight through most of his examination; that he was not neat or well groomed, but was plain and clean; and that plaintiff reported being depressed and unable to find a job in which he could function (Tr. 177–178). Dr. Nelson did not report the results of any standardized tests and there is no indication that he administered any. Dr. Nelson's report consists mostly of a recitation of the plaintiff's complaints and history. Despite the lack of any clinical findings or testing, Dr. Nelson diagnosed Anxiety Neurosis, Somatic Conversion Reaction problem, and Depression with endogenous and exogenous factors (Tr. 178). He completed a Psychiatric Review Technique Form wherein he opined that plaintiff meets the Listing requirements for Somatoform Disorder (12.07), and Anxiety Disorder (12.06), and that he equals the Listing requirements for Affective Disorder (12.04) and Organic Mental Disorder (12.02) (Tr. 188–196). In a mental medical assessment form completed by Dr. Nelson, he opined that the plaintiff is seriously limited, or has no useful ability to engage in the mental activities required for work in the national economy (Tr. 197–199).

Plaintiff underwent a third psychological examination by Pamela Branton, Licensed Psychological Examiner, and Michael O. Buckner, Licensed Psychologist, on July 12, 1995 (Tr. 204–207). On mental status examination, plaintiff had good eye contact; he was oriented to person, place, time, and event; his speech was normal, with a normal rate, amount, and volume; his short term memory was fair to poor; his recent memory was poor; his remote memory was good; his thought processes were organized but somewhat concrete; his insight was fair; his judgment was fair to good; his affect was appropriate; his mood was pleasant and not overly depressed; and his concentration was fair to poor (Tr. 205–206). Results of the Woodcock–Johnson test demonstrated plaintiff to be reading at the seventh grade level and performing math at the beginning seventh grade level (Tr. 207). In a mental medical assessment, Dr. Buckner opined that plaintiff's abilities to follow work rules, relate to co-workers, deal with the public, interact with supervisors, and maintain personal appearance are "good" (more than satisfactory); that his ability to understand, remember, and carry out simple job instructions is "unlimited" (not limited by a mental impairment) to "good"; that his abilities to use judgment, and deal with stresses are "good" to "fair" (limited, but satisfactory); that his abilities to understand, remember and carry out detailed, but not complex job instructions, behave in an emotionally stable manner, and relate predictably in social situations are "fair"; that his ability to demonstrate reliability is "fair" to "poor" (seriously limited, but not precluded) and that his ability to understand, remember and carry out complex job instructions is "poor" (Tr. 208–209).

Plaintiff underwent another consultative psychological examination on February 23, 1998, with Shawn David Hassler, Licensed Psychological Examiner, and Pamela Jones, Licensed Psychologist (Tr. 251–258). On mental status examination plain-

tiff was not intimidated by the evaluation process; he had a range of affect; he never lost his composure; his recent memory was fairly good; his remote memory was good; his attention span was fairly good; his stream of thought was normal; he was never hostile or frustrated; and it was fairly easy to establish rapport with the plaintiff (Tr. 254–255). Results of the WAIS–R placed plaintiff in the average range of intellectual functioning (Tr. 255). Results of the WRAT–R showed plaintiff to be reading at the seventh grade level and performing math at the eighth grade level (Tr. 256). Dr. Jones diagnosed Dysthymic Disorder (Tr. 257). In a mental medical assessment, Dr. Jones opined that plaintiff's ability to relate to co-workers is "unlimited" (not limited by a mental impairment); that his abilities to follow work rules, deal with the public, use judgment, interact with supervisors, and maintain personal appearance are "good" (more than satisfactory); that his abilities to maintain attention/concentration and understand, remember, and carry out simple job instructions is "fair" (limited, but satisfactory) to "good" (more than satisfactory); and that plaintiff's abilities to deal with work stresses, behave in an emotionally stable manner, relate predictably in social situations, demonstrate reliability, and understand, remember, and carry out complex, and detailed, but not complex job instructions are "fair" (Tr. 259–260). Plaintiff underwent some treatment for depression at Child and Family Services between June 3, 1995, and October 14, 1995 (Tr. 353–357). On October 14, 1995, it was opined that plaintiff got significant benefit from antidepressant medication and the identification of his depression (Tr. 351). The therapists at the Child and Family Therapy Center declined to complete a mental medical assessment (*see* Tr. 349).

 Dr. Nelson is not a treating physician. Rather, Dr. Nelson was hired by the plaintiff's attorney to examine him on one occasion and he provided the plaintiff with no treatment. Thus, Dr. Nelson's opinion is not entitled to the deference ordinarily given to a treating physician's opinion. *See Barker v. Shalala,* 40 F.3d 789, 794 (6th Cir.1994). Even if Drs. Nelson were a treating physician, the Commissioner may reject the determinations of a treating physician when good reasons are identified for not accepting them, *Hall v. Bowen,* 837 F.2d 272, 276 (6th Cir.1988). Additionally, it is well within the province of the ALJ/Commissioner to conclude that the medical evidence is more consistent with the reports of one physician than another, *Crowe v. Harris,* 489 F.Supp. 683, 689 (E.D.Tenn.1980), and it is the Commissioner's duty to resolve conflicting medical evidence, *Richardson v. Perales,* 402 U.S. 389, 399, 91 S.Ct. 1420, 1426, 28 L.Ed.2d 842 (1971). *See also Allen v. Heckler,* 749 F.2d 577, 579 (9th Cir.1984), (court held that "[w]here medical testimony is conflicting ... it is the ALJ's role to determine credibility and to resolve the conflict. (citation omitted)."); *Wokojance v. Weinberger,* 513 F.2d 210, 212 (6th Cir.), *cert. denied,* 423 U.S. 856, 96 S.Ct. 106, 46 L.Ed.2d 82 (1975) (court held that "[i]t is for the Secretary to resolve conflicts in the evidence and to decide questions of credibility. (citation omitted)."). If the evidence can be rationally interpreted in more than one way, the decision of the Commissioner must be upheld. *See Tyra v. Secretary of Health and Human Services,* 896 F.2d 1024, 1028 (6th Cir.1990); *Allen v. Heckler,* 749 F.2d 577, 579 (9th Cir.1984). In rejecting Dr. Nelson's opinion, the ALJ stated the following:

> No evidentiary weight is given to a conclusory opinion of disability offered by Dr. Nelson, a psychiatrist who performed a one time evaluation of the claimant at the request of his representative in April, 1995 (Exhibit 29). This psychiatrist opined that the claimant's mental impairments are of such a level of severity as to meet, or equal, a number of the listed impairments of Appendix 1 of the Social Security Regulations. This conclusion, however, is inconsistent with the treatment records from the

claimant's mental health case worker who treated him only a few years ago, (Exhibit B–1), and it is also not compatible with the findings and testing results of other qualified psychologists who have evaluated the claimant (See Exhibits 32, B–4F, and B–15F). Dr. Nelson additionally concluded that the claimant has "poor, if any" ability to function in several of the assessed vocational areas (Exhibit 29). Such a conclusion cannot be accorded any evidentiary weight as it is also inconsistent with the treatment records from the case worker who counseled the claimant a couple of years ago, (Exhibit B–1F), and with the opinions of other psychologists who have evaluated the claimant (See Exhibits 32, B–4F, and B–15F)....

(Tr. 25–26). I find no error in the ALJ/Commissioner's rejection of the conclusory opinion of Dr. Nelson. Dr. Nelson's unsupported opinion is absolutely inconsistent with the psychological evaluations and assessments provided by three other psychologists who provided detailed clinical observations and results of standardized psychological testing in their reports. There is simply no credible evidence of a serious mental impairment in this record.

Plaintiff contends that the ALJ/Commissioner posed an improper hypothetical question to the vocational expert in that he did not ask the vocational expert to consider his "marginal" to "limited" reading ability.

■ The plaintiff has a high school education and has received additional vocational training as a refrigeration technician. The vocational expert was asked to assume an individual with the plaintiff's education, training, and prior work experience. I find no error in the ALJ/Commissioner's failure to ask the vocational expert to assume that plaintiff has marginal to limited reading ability.

Plaintiff contends that the ALJ/Commissioner erred in rejecting his credibility.

■ Credibility determinations regarding a claimant's subjective complaints rest with the Commissioner, *Siterlet v. Secre-*tary of Health and Human Services, 823 F.2d 918, 920 (6th Cir.1987), and these determinations should not be discarded lightly, *Beavers v. Secretary of Health, Education and Welfare,* 577 F.2d 383, 387 (6th Cir.1978). *See also King v. Heckler,* 742 F.2d 968, 974 (6th Cir.1984) (court held that it is for the Secretary (now Commissioner) to resolve conflicts in the medical evidence and determine issues of credibility). It is well settled that when there is no underlying medical basis, the Commissioner need not fully credit subjective complaints. *See Fraley v. Secretary of Health and Human Services,* 733 F.2d 437, 440 (6th Cir.1984). The plaintiff's subjective complaints regarding his condition which exceed the credible documented medical evidence have no underlying medical basis. Neither of the orthopedic specialists who examined the plaintiff found more than slight impairment as a result of any musculoskeletal impairments; and both rendered medical assessments indicating that the plaintiff can perform a limited range of light work. Additionally, there is no evidence that the plaintiff suffers any residual impairment as a result of his seizure disorder. Two neurologists opined that plaintiff's seizure disorder is well controlled on Dilantin (Tr. 136–138; 143–144; 145–146). Dr. Dougherty opined that plaintiff has no physical limitations as a result of his seizure disorder (Tr. 138). I find no error in the Commissioner's evaluation of the plaintiff's subjective complaints.

In light of all of the foregoing, I find that the ALJ/Commissioner's decision that the plaintiff is not disabled is supported by substantial evidence on the record as a whole. Accordingly, it is hereby **RECOMMENDED** that the Commissioner's motion for summary judgment be **GRANTED;** and that the plaintiff's motion for summary judgment be **DENIED.**[5]

April 11, 2000.

5. Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall,* 806 F.2d 636 (6th Cir.1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers,* 829 F.2d 1370 (6th Cir.1987).